UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re REMICADE ANTITRUST LITIGATION | Civil Action No. 2:17-cv-04326-KSM **(Consolidated)** |
| This Document Relates To: | CLASS ACTION |
| INDIRECT PURCHASER ACTIONS. | The Honorable Karen S. Marston |

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNCONTESTED MOTION FOR AN ORDER: (1) CERTIFYING A SETTLEMENT CLASS; (2) GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT; (3) APPOINTING CLASS COUNSEL; (4) APPOINTING A SETTLEMENT ADMINISTRATOR AND ESCROW AGENT; (5) APPROVING THE FORM AND MANNER OF NOTICE TO THE SETTLEMENT CLASS; (6) PRELIMINARILY APPROVING THE PLAN OF ALLOCATION AND DISTRIBUTION; AND (7) SCHEDULING A FAIRNESS HEARING

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ................................................................................................2

    A.    Plaintiffs' Claims ..................................................................................2

III.  THE PROPOSED SETTLEMENT CLASS .......................................................3

IV.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED.................................4

    A.    The Standard for Certification of a Settlement Class ..............................4

    B.    Rule 23(a) Is Satisfied...........................................................................6

        1.    Numerosity Is Satisfied...............................................................6

        2.    Commonality Is Satisfied.............................................................6

        3.    Typicality Is Satisfied .................................................................8

        4.    Adequacy Is Satisfied .................................................................8

    C.    The Requirements of Rule 23(b)(3) Are Satisfied..................................9

        1.    Common Legal and Factual Questions Predominate for Plaintiffs' Claims ........................................................................9

        2.    A Rule 23(b)(3) Class Action Is Superior to Other Methods of Adjudication.......................................................11

    D.    This Court Should Appoint Robbins Geller Rudman & Dowd LLP as Class Counsel.............................................................................13

V.    THE PROPOSED SETTLEMENT IS SUFFICIENTLY FAIR, REASONABLE, AND ADEQUATE TO WARRANT PRELIMINARY APPROVAL AND AUTHORIZE DISSEMINATION OF NOTICE.................................................13

    A.    The Role of Preliminary Approval in the Settlement Evaluation Process............13

    B.    Review of the Applicable Factors Favors Preliminary Approval of This Settlement ....................................................................................16

        1.    The Settlement Is the Product of Arms-Length Negotiations Conducted by Highly Experienced Antitrust Litigators Who Adequately Represented the Class and Were Informed by the Extensive Discovery Completed in This Case...........................16

**Page**

2.    The Relief Provided Is Adequate and Will Be Fairly Allocated Using a Methodology Like that Approved and Used in Similar Cases ................................................................................................17

a.    The Amount of the Relief Is Adequate, Especially Considering the Costs, Risks, and Delay of Trial and Appeal ...........................................................................................18

b.    The Proposed Method of Processing Class-Member Claims and Distributing Relief to the Class Is Fair and Effective ............18

c.    The Additional Factors Related to the Adequacy of Relief Raise No Issues ...............................................................................19

C.    The Proposed Plan of Allocation and Distribution Is Fair, Reasonable and Adequate ......................................................................................................20

VI.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ...........................21

A.    The Proposed Class Notice Program Provides for a Reasonable Manner of Notice Calculated to Reach Class Members ........................................................22

B.    The Proposed Form of Class Notice Adequately Informs Class Members of Their Rights in This Action ................................................................................23

C.    The Court Should Appoint Gilardi & Co., LLC, as Settlement Administrator ....................................................................................................23

VII.    THIS COURT SHOULD APPROVE THE PROPOSED SCHEDULE FOR FINAL APPROVAL...........................................................................................24

VIII.    CONCLUSION.................................................................................................24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997)................................................................................ *passim*

*Baby Neal v. Casey,*
    43 F.3d 48 (3d Cir. 1994) ...........................................................................7, 8

*Beck v. Maximus, Inc.,*
    457 F.3d 291 (3d Cir. 2006).............................................................................8

*Carrera v. Bayer Corp.,*
    727 F.3d 300 (3d Cir. 2013)...........................................................................13

*Curiale v. Lenox Grp., Inc.,*
    No. 07-1432, 2008 WL 4899474
    (E.D. Pa. Nov. 14, 2008)..........................................................................14, 16

*DeBoer v. Mellon Mortg. Co.,*
    64 F.3d 1171 (8th Cir. 1995) .........................................................................23

*Esslinger v. HSBC Bank Nevada, N.A.,*
    No. 10-3213, 2012 WL 5866074
    (E.D. Pa. Nov. 20, 2012)................................................................................17

*Georgine v. Amchem Prods.,*
    83 F.3d 610 (3d Cir. 1996)
    *aff'd sub nom. Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997).......................................................................................11

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975)...........................................................................16

*Illinois Brick Co. v. Illinois,*
    431 U.S. 720 (1977).......................................................................................20

*In re Abbott Labs. Norvir Antitrust Litig.,*
    No. C 04-1511 CW, 2007 WL 1689899
    (N.D. Cal. June 11, 2007) ................................................................................5

*In re Amtrak Train Derailment,*
    No. 15-md-2654, 2016 WL 1359725
    (E.D. Pa. Apr. 6, 2016) ....................................................................................5

*In re Bulk (Extruded) Graphite Antitrust Litig.,*
    No. Civ. 02-6030 (WHW), 2006 WL 891362
    (D.N.J. Apr. 4, 2006) .......................................................................................6

**Page**

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ...................................................................5

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)...........................................................................15

*In re Cmty. Bank of N. Va.*,
418 F.3d 277 (3d Cir. 2005)........................................................................5, 10

*In re Comcast Corp. Set-Top Cable*,
656 F. App'x 8 (3d Cir. 2016) ........................................................................12

*In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*,
No. 09-md-2034, 2018 WL 4252463
(E.D. Pa. Sept. 5, 2018) ...................................................................................5

*In re Domestic Drywall Antitrust Litig.*,
322 F.R.D. 188 (E.D. Pa. 2017).......................................................................8

*In re Fasteners Antitrust Litig.*,
No. 08-md-1912, 2014 WL 285076
(E.D. Pa. Jan 24, 2014) ....................................................................................8

*In re Flat Glass Antitrust Litig.*,
191 F.R.D. 472 (W.D. Pa. 1999) ......................................................................8

*In re Flonase Antitrust Litig.*,
284 F.R.D. 207 (E.D. Pa. 2012)...............................................................5, 7, 11

*In re Gen. Instrument Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001) .............................................................17

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)..............................................................................15

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008),
*as amended* (Jan. 16, 2009).............................................................................11

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009)..............................................................................9

*In re Linerboard Antitrust Litig.*,
203 F.R.D. 197 (E.D. Pa. 2001),
*aff'd*, 305 F.3d 145 (3d Cir. 2002) ........................................................6, 7, 9, 11

**Page**

*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003) ....................................................................15

*In re Lidoderm Antitrust Litig.*,
    No. 14-md-02521-WHO, 2017 WL 679367
    (N.D. Cal. Feb. 21, 2017) ..................................................................................5

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    205 F.R.D. 369 (D.D.C. 2002) ...........................................................................5

*In re Mercedes-Benz Antitrust Litig.*,
    213 F.R.D. 180 (D.N.J. 2003) ...........................................................................10

*In re Modafinil Antitrust Litig.*,
    837 F.3d 238 (3d Cir. 2016),
    *as amended* (Sept. 29, 2016) ........................................................................6, 11

*In re Nexium (Esomeprazole) Antitrust Litig.*,
    297 F.R.D. 168 (D. Mass. 2013),
    *aff'd*, 777 F.3d 9 (1st Cir. 2015) ......................................................................5

*In re NFL Players' Concussion Inj. Litig.*,
    301 F.R.D. 191 (E.D. Pa. 2014) ...................................................................14, 15

*In re NFL Players Concussion Inj. Litig.*,
    775 F.3d 570 (3d Cir. 2014) ..............................................................................4

*In re NFL Players Concussion Inj. Litig.*,
    821 F.3d 410 (3d Cir. 2016),
    *as amended* (May 2, 2016) ......................................................................8, 11, 23

*In re Processed Egg Prods. Antitrust Litig.*,
    No. 08-md-2002, 2016 WL 3584632
    (E.D. Pa. June 30, 2016) ........................................................................5, 10, 11

*In re Processed Egg Prods. Antitrust Litig.*,
    No. 828083, 2014 WL 828083
    (E.D. Pa. Feb. 28, 2014) ..................................................................................15

*In re Prudential Ins. Co. Am. Sales Pracs. Litig.*,
    148 F.3d 283 (3d Cir. 1998) ....................................................................7, 21, 22

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005) ..........................................................................5

**Page**

*In re Remeron End-Payor Antitrust Litig.*,
No. Civ. 02-2007 FSH, 2005 WL 2230314
(D.N.J. Sept. 13, 2005) ...................................................................................5

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)..........................................................................16

*In re Shop-Vac Mktg. & Sales Pracs. Litig.*,
No. 4:12-md-2380, 2016 WL 3015219
(M.D. Pa. May 26, 2016) .................................................................................5

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
No. 14-md-02503 2017 WL 4621777
(D. Mass. Oct. 16, 2017).................................................................................5

*In re TriCor Indirect Purchaser Antitrust Litig.*,
No. 05-360-SLR, 2009 WL 3460769
(D. Del. Oct. 28, 2009) ...................................................................................5

*In re Vitamins Antitrust Litig.*,
209 F.R.D. 251 (D.D.C. 2002).......................................................................10

*In re Warfarin Sodium Antitrust Litig.*,
212 F.R.D. 231 (D. Del. 2002),
*aff'd*, 391 F.3d 516 (3d Cir. 2004) .................................................................5

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004).............................................................10, 12, 16

*In re Wellbutrin XL Antitrust Litig.*,
282 F.R.D. 126 (E.D. Pa. 2011)........................................................5, 7, 8, 12

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
No. MDL 1559 4:03-MD-015, 2004 WL 3671053
(W.D. Mo. Apr. 20, 2004) .............................................................................22

*Jackson v. Se. Pa. Transp. Auth.*,
260 F.R.D. 168 (E.D. Pa. 2009)......................................................................6

*McAlarnen v. Swift Transp. Co., Inc.*,
No. 09-1737, 2010 WL 365823
(E.D. Pa. Jan. 29, 2010) ................................................................................17

*McDonough v. Horizon Blue Cross Blue Shield of N.J.*,
641 F. App'x 146 (3d Cir. 2015) ...................................................................16

Page

*McDonough v. Toys R Us, Inc.*,
   638 F. Supp. 2d 461 (E.D. Pa. 2009) ..................................................................12

*Melhing v. N.Y. Life Ins. Co.*,
   248 F.R.D. 455 (E.D. Pa. 2008) ..........................................................................20

*Nichols v. SmithKline Beecham Corp.*,
   No. Civ.A.00-6222, 2005 WL 950616
   (E.D. Pa. Apr. 22, 2005) ..............................................................................5, 23

*Stechert v. Travelers Home & Marine Ins. Co.*,
   No. 17-0784-KSM, 2021 WL 5235221
   (E.D. Pa. Nov. 9, 2021) (Marston, J.) ............................................................ *passim*

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ........................................................................ *passim*

*Szczubelek v. Cendant Mortg. Corp.*,
   215 F.R.D. 107 (D.N.J. 2003) ..............................................................................6

*Thomas v. NCO Fin. Sys.*,
   No. CIV.A.00-5118, 2002 WL 1773035
   (E.D. Pa. July 31, 2002) ....................................................................................14

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ..........................................................................................10

*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*,
   246 F.R.D. 349 (D.D.C. 2007) ............................................................................5

*Walgreen Co. v. Johnson & Johnson*,
   No. 2:18-cv-02357-KSM (E.D. Pa.) ....................................................................3

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338, 350, 359 (2011) ............................................................................7

*Wood v. Saroj & Manju Invs. Phila. LLC*,
   No. 19-2820-KSM, 2020 WL 7711409
   (E.D. Pa. Dec. 28, 2020) ..........................................................................4, 9, 19

Page

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 23 ................................................................................................ *passim*
    Rule 23(a) .............................................................................................4, 5, 6
    Rule 23(a)(2) .................................................................................................6
    Rule 23(a)(3) .................................................................................................8
    Rule 23(a)(4) .........................................................................................8, 9, 13
    Rule 23(b) ..................................................................................................4, 5
    Rule 23(b)(3) ....................................................................................5, 9, 10, 11
    Rule 23(b)(3)(A) ..........................................................................................11
    Rule 23(b)(3)(B) ..........................................................................................11
    Rule 23(b)(3)(C) ..........................................................................................11
    Rule 23(b)(3)(D) ......................................................................................5, 11
    Rule 23(c)(2) ..........................................................................................22, 23
    Rule 23(c)(2)(B) ..........................................................................................23
    Rule 23(c)(3) ...............................................................................................23
    Rule 23(e) ............................................................................................. *passim*
    Rule 23(e)(1) ..........................................................................................4, 15
    Rule 23(e)(1)(B) ..........................................................................................21
    Rule 23(e)(2) ......................................................................................14, 15, 16
    Rule 23(e)(2)(A) .....................................................................................16, 17
    Rule 23(e)(2)(B) ................................................................................16, 17, 22
    Rule 23(e)(2)(C) ..........................................................................................17
    Rule 23(e)(2)(C)(iii) .....................................................................................19
    Rule 23(e)(2)(C)(iv) .....................................................................................19
    Rule 23(e)(2)(D) .....................................................................................17, 19
    Rule 23(e)(3) ...............................................................................................15
    Rule 23(g) .............................................................................................9, 13
    Rule 23(g)(1)(A) ..........................................................................................13

## SECONDARY AUTHORITIES

*Manual for Complex Litigation* (Fourth) (2005)
    §21.632 .......................................................................................................4

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Local 295 IBT Employer Group Welfare Fund and National Employees Health Plan ("Plaintiffs") submit this Memorandum of Law in support of their Motion for Preliminary Approval of Settlement with Johnson & Johnson and Janssen Biotech, Inc. ("Defendants"), for Preliminary Certification of Settlement Class, and for Permission to Disseminate Notice of the Proposed Settlement to Members of the Settlement Class (the "Motion").  For the reasons set forth below, the Proposed Settlement merits preliminary approval and the Settlement Class qualifies for certification, warranting Notice of the Proposed Settlement to members of the Settlement Class.

## I.      INTRODUCTION

After more than four years of hard-fought litigation, which involved hotly contested dispositive motions, and extensive document discovery, depositions and expert analysis – and while Defendants deny any allegations of unlawful or wrongful conduct and believe they have meritorious defenses to this Action – Plaintiffs have achieved a settlement with Defendants that provides a total of $25,000,000 in relief to the proposed Settlement Class of indirect purchasers of Defendants' biologic drug Remicade.[1]  By any measure, this outcome represents success for the proposed Settlement Class.

Accordingly, Plaintiffs respectfully request that the Court enter an order substantially in the form of the proposed Preliminary Approval Order: (1) Certifying a Settlement Class; (2) Granting Preliminary Approval of the Settlement Agreement; (3) Appointing Class Counsel; (4) Appointing a Settlement Administrator and Escrow Agent; (5) Approving the Form and Manner of Notice to the Settlement Class; (6) Preliminarily Approving the Plan of Allocation and Distribution; and (7) Scheduling a Fairness Hearing.

---

[1]    The settlement terms are memorialized in the Stipulation of Class Action Settlement ("Settlement Agreement") entered into by the parties, attached as Exhibit 1 to the Declaration of Alexandra S. Bernay ("Bernay Decl."), filed concurrently.  All defined terms herein shall have the same meanings as set forth in the Settlement Agreement.

In sum, the provisions of the requested Preliminary Approval Order will set in motion the steps necessary to obtain final approval of the proposed Settlement as required by Rule 23(e). At this time, the Court need only determine that the proposed Settlement is sufficiently fair, reasonable, and adequate to support the conclusion that "the court will likely be able to" approve the Settlement and certify the Class for settlement purposes such that notice to the members of the proposed Settlement Class is warranted. Fed. R. Civ. P. 23(e). Plaintiffs submit that the proposed Settlement satisfies the applicable standards, and respectfully request that the Court enter the proposed Preliminary Approval Order.

## II.     BACKGROUND

### A.     Plaintiffs' Claims

In late summer and early autumn 2017, three putative class indirect-purchaser antitrust actions were filed against Defendants, alleging violations of various state and federal antitrust and state consumer-protection laws related to Defendants' alleged anticompetitive conduct in the market for its infliximab biologic, Remicade. On November 21, 2017, these actions were consolidated under the caption *In re Remicade Antitrust Litigation*, No. 2:17-cv-04326-KSM (E.D. Pa.). On January 22, 2018, the Court appointed Interim Class and Interim Liaison Counsel for the putative indirect-purchaser class. On February 21, 2018, a Consolidated Amended Complaint was filed on behalf of the putative class. On December 7, 2018, the Court denied in part and granted in part Defendants' motion to dismiss the Consolidated Amended Complaint.

Remicade was approved by the U.S. Food and Drug Administration ("FDA") in 1998 to treat Crohn's disease. Since its initial FDA approval, Remicade has also been approved for the treatment of other autoimmune disorders including ulcerative colitis, rheumatoid arthritis, ankylosing spondylitis, arthritis, and plaque psoriasis. For almost two decades while being protected by patent, Remicade was the only infliximab product on the U.S. market. Plaintiffs' central allegation is that Remicade had a dominant market position and that, following biosimilar entry, Defendants abused

that dominant position to suppress competition in the infliximab market through exclusionary contracts with health insurers and healthcare providers, alongside additional alleged anticompetitive conduct. Defendants deny Plaintiffs' allegations and maintain that they acted appropriately to compete in the market for Remicade at all times, and did not engage in any anticompetitive conduct.

Over the course of the Action, the Parties engaged in extensive fact and expert discovery, including exchanging and analyzing in excess of approximately 18 million pages of party and non-party documents and data, serving and responding to 32 interrogatories and numerous requests for admission, responding to multiple requests for production of documents, conducting 32 depositions of parties and non-parties, including depositions of representatives of Named Plaintiffs, and preparing for the exchange of expert reports and disclosures. Discovery was consolidated with two related actions, *Pfizer Inc. v. Johnson & Johnson*, No. 2:17-cv-04180-KSM (E.D. Pa.) ("*Pfizer* Action"), and *Walgreen Co. v. Johnson & Johnson*, No. 2:18-cv-02357-KSM (E.D. Pa.) ("*Retailer* Action").

The Settlement Agreement was arrived at only after extensive negotiations, during which the strengths and weaknesses of the respective parties' positions were assessed, evaluated, and negotiated. Bernay Decl., ¶¶6-7. These negotiations occurred after discovery was near completion, allowing Class Counsel to continue meaningful discussions after having reviewed millions of pages of documents, taking more than 30 depositions, evaluating detailed expert information and financial data, this Court's prior rulings, and the resolution of the *Pfizer* and *Retailer* Actions. *Id.*, ¶6.

## III.    THE PROPOSED SETTLEMENT CLASS

The definition of the proposed Settlement Class is:

All persons and entities in the United States and its territories who indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price of Defendants' infliximab between April 5, 2016 and February 28, 2022 ("Class Period").

The following groups are excluded from the Class:

(a) Defendants, their officers, directors, management, employees, subsidiaries and affiliates; (b) all federal and state governmental entities except for cities, towns or municipalities with self-funded prescription drug plans; (c) all persons or entities who purchased Defendants' infliximab for purposes of resale or who purchased infliximab directly from Defendants; (d) fully insured health plans (*i.e.*, health plans that purchased insurance covering 100% of their reimbursement obligation to members); (e) any "flat co-pay" consumers whose purchases of Defendants' infliximab were paid in part by a third-party payor and whose co-payment was the same regardless of the retail purchase price; (f) pharmacy benefit managers; (g) any judges or justices involved in this action and any members of their immediate families; and (h) any providers (including but not limited to hospitals, clinics, and physicians) who purchase Remicade and are later reimbursed for the provision of Remicade.

## IV.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Under Rule 23, to obtain preliminary approval of a settlement the proponents must show that "the court will likely be able to . . . certify the class for purposes of judgment on the [settlement] proposal." Fed R. Civ. P. 23(e)(1); *see Stechert v. Travelers Home & Marine Ins. Co.,* No. 17-0784-KSM, 2021 WL 5235221 (E.D. Pa. Nov. 9, 2021) (Marston, J.) (detailing standard for granting preliminary approval of class action settlement); *Wood v. Saroj & Manju Invs. Phila. LLC*, No. 19-2820-KSM, 2020 WL 7711409, at *3 (E.D. Pa. Dec. 28, 2020) (Marston, J.) (same); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation* (Fourth) §21.632 (2005).  Thus, "when a district court is presented with a class settlement agreement, the court must first determine that the requirements for class certification under Rule 23(a) and (b) are met, and must separately determine that the settlement is fair to the class under [Rule] 23(e)." *In re NFL Players Concussion Inj. Litig.*, 775 F.3d 570, 581 (3d Cir. 2014) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 319 (3d Cir. 2011)).

### A.   The Standard for Certification of a Settlement Class

Plaintiffs and Defendants have agreed, subject to the Court's review and approval, to certification of the Settlement Class for purposes of Settlement.  Nevertheless, "regardless of whether a district court certifies a class for trial or for settlement, it must first find that the class

satisfies all the requirements of Rule 23." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 300 (3d Cir. 2005).[2] Notably, however when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D); *Cmty. Bank*, 418 F.3d at 306 (3d Cir. 2005)); *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2016 WL 3584632, at *8 (E.D. Pa. June 30, 2016).

The Settlement Class here readily satisfies both Rule 23(a) and Rule 23(b).  Indeed, federal courts regularly certify litigation and settlement classes asserting claims alleging anticompetitive conduct involving prescription drugs.[3]

---

[2]   At the preliminary approval stage, a court makes only make a preliminary class determination, "reserv[ing] the certification decision until after Notice of the proposed Settlement Agreement has been sent to putative Class Members." *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, No. 09-md-2034, 2018 WL 4252463, at *7 (E.D. Pa. Sept. 5, 2018).  "This preliminary determination employs a 'less rigorous analysis than that necessary for final certification' because courts conduct a 'fairness hearing in order to issue a final class certification and approve the settlement.'" *In re Shop-Vac Mktg. & Sales Pracs. Litig.*, No. 4:12-md-2380, 2016 WL 3015219, at *3 (M.D. Pa. May 26, 2016) (quoting *In re Amtrak Train Derailment*, No. 15-md-2654, 2016 WL 1359725, at *2, *4 (E.D. Pa. Apr. 6, 2016)).

[3]   *See In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017); *In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168 (D. Mass. 2013), *aff'd*, 777 F.3d 9 (1st Cir. 2015); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503 2017 WL 4621777 (D. Mass. Oct. 16, 2017); *In re Wellbutrin XL Antitrust Litig.*, 282 F.R.D. 126, 145 (E.D. Pa. 2011); *In re Flonase Antitrust Litig.*, 284 F.R.D. 207 (E.D. Pa. 2012); *In re Abbott Labs. Norvir Antitrust Litig.*, No. C 04-1511 CW, 2007 WL 1689899, at *7-*8, *10-*11 (N.D. Cal. June 11, 2007); *In re TriCor Indirect Purchaser Antitrust Litig.*, No. 05-360-SLR, 2009 WL 3460769 (D. Del. Oct. 28, 2009) (certifying a national Rule 23(b)(3) class of consumers and third-party payors ("TPP")); *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349 (D.D.C. 2007) ("*Ovcon*") (certifying national class of TPPs); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) (same); *In re Remeron End-Payor Antitrust Litig.*, No. Civ. 02-2007 FSH, 2005 WL 2230314 (D.N.J. Sept. 13, 2005) (certifying a national class of consumers and TPPs); *Nichols v. SmithKline Beecham Corp.*, No. Civ.A.00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) (same); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) (same); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002) (same), *aff'd*, 391 F.3d 516 (3d Cir. 2004); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369 (D.D.C. 2002) (certifying a multi-state class of consumers and separate multi-state class of TPPs).

### B.    Rule 23(a) Is Satisfied

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a); *see also Amchem*, 521 U.S. at 613; *Stechert*, 2021 WL 5235221, at *3-*4.  These requirements are satisfied here.

#### 1.    Numerosity Is Satisfied

Numerosity is satisfied where the proposed class is so large that the traditional joinder of parties would be "'unworkable.'" *In re Bulk (Extruded) Graphite Antitrust Litig.*, No. Civ. 02-6030 (WHW), 2006 WL 891362, at *5 (D.N.J. Apr. 4, 2006).  It does not require "'that joinder would be impossible, but rather that joinder would be extremely difficult or inconvenient.'" *Jackson v. Se. Pa. Transp. Auth.*, 260 F.R.D. 168, 185-86 (E.D. Pa. 2009) (quoting *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 116 (D.N.J. 2003)).  In determining numerosity, "'a court may accept common sense assumptions.'"  *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 205 (E.D. Pa. 2001), *aff'd*, 305 F.3d 145 (3d Cir. 2002).[4]  Generally, though, if the "'potential number of plaintiffs exceeds 40, the [numerosity] prong of Rule 23(a) has been met.'"  *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 250 (3d Cir. 2016), *as amended* (Sept. 29, 2016); *Stechert*, 2021 WL 5235221, at *2. The Settlement Class includes thousands of consumer and TPP members who are geographically dispersed across the country.  Accordingly, numerosity has been satisfied.

#### 2.    Commonality Is Satisfied

Rule 23(a)(2) requires that there be "questions of law or fact common to the members of the class."  As the Third Circuit has observed:

---

[4]    All citations are omitted and emphasis is added unless otherwise stated.

> A finding of commonality does not require that all class members share identical claims, and indeed "factual differences among the claims of the putative class members do not defeat certification. The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."

*In re Prudential Ins. Co. Am. Sales Pracs. Litig.*, 148 F.3d 283, 310 (3d Cir. 1998) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)); *Stechert*, 2021 WL 5235221, at *2. The commonality requirement "is easily met because it may be fulfilled by a single common issue." *Linerboard*, 203 F.R.D. at 205. In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court held that this factor is meant to evaluate "'the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation,'" and reiterated that "''[e]ven a single [common] question''" can satisfy the commonality requirement.[5] 564 U.S. 338, 350, 359 (2011). There are numerous issues of law and fact common to the class here including whether Defendants unlawfully excluded competition for biosimilar infliximab; the duration of the alleged scheme and the acts carried out by Defendants in furtherance of the suspect conduct; whether the alleged conduct violated the Sherman Antitrust Act; whether the alleged scheme violated various state and federal antitrust and state consumer-protection statutes; whether Defendants' conduct caused injury to the business or property of Plaintiffs and members of the Class; whether and to what extent Defendants concealed any alleged wrongdoing; the effect of the alleged scheme on the prices of infliximab in the United States during the Class Period; appropriate injunctive relief for the Class; and the appropriate classwide measure of damages for the Class. Commonality is satisfied.

---

[5]   *See also Flonase*, 284 F.R.D. at 217 ("[P]roof of the essential elements of these [monopolization, unfair trade practice, and unjust enrichment] claims will be common across the class and focused on [defendant']s behavior, not that of the individual class members."); *Wellbutrin XL*, 282 F.R.D.at 137 (finding commonality met where "[e]ach class member's claims depend on whether or not the defendants unlawfully engaged in anticompetitive behavior to limit the entry of generic competitors in violation of each state's respective antitrust and/or consumer protection laws").

### 3. Typicality Is Satisfied

Rule 23 requires that "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). The typicality factor examines "'whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class.'" *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006). "There is a '"low threshold" for typicality'; provided 'the interests of the class and the class representative are aligned,' courts will find typicality even when class members' claims are only legally similar, and not factually similar." *Stechert,* 2021 WL 5235221, at *5 (citing *In re NFL Players Concussion Inj. Litig.*, 821 F.3d 410, 427-28 (3d Cir. 2016), *as amended* (May 2, 2016)). Typicality exists "[i]f the representative's claims and those of the absent class members arise from the same course of conduct and are based on the same legal theories . . . regardless of factual differences underlying the individual claims." *Wellbutrin XL*, 282 F.R.D. at 138 (citing *Baby Neal*, 43 F.3d at 57-58); *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 479 (W.D. Pa. 1999) (same).

Here, each putative Class Member's claim arises from the same alleged illegal practices and course of conduct that underlie Plaintiffs' claims, namely, Defendants' efforts to suppress infliximab competition. Each may prove their claims in a similar manner – by demonstrating that they purchased Remicade at prices artificially inflated as a result of Defendants' unlawful conduct.

### 4. Adequacy Is Satisfied

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The Court must measure the adequacy of representation by two standards: "(1) ensure that the named plaintiff and its counsel have the ability and the incentive to represent the claims of the class vigorously, and (2) that there is no conflict between the individual's claims and those asserted on behalf of the class." *In re Domestic Drywall Antitrust Litig.*, 322 F.R.D. 188, 199 (E.D. Pa. 2017); *see also Stechert*, 2021 WL 5235221, at *5; *In re Fasteners Antitrust Litig.*, No. 08-

- 8 -

md-1912, 2014 WL 285076, at *6 (E.D. Pa. Jan 24, 2014) (adequacy of representation requirement "has dual concerns: to ensure that class representatives do not have interests antagonistic to the class and that class counsel have the necessary skills and qualifications to adequately represent the class"); *Linerboard*, 203 F.R.D. at 207 (same).  Both standards are met here.

In this Action, Plaintiffs have vigorously represented the Class.  Each retained competent counsel, actively participated in extensive discovery (both written and via deposition) and routinely and regularly communicated with counsel concerning the status of the Action, as well as important litigation decisions.  This knowledge and participation exceeds that which is necessary to demonstrate adequacy in this regard. *See Wood*, 2020 WL 7711409, at *5 (class plaintiff adequate where they "represented the class capably and diligently, . . . provid[ing] counsel with the paperwork and information they needed to initiate this case and substantiate [plaintiff's] claims" and participated in settlement).  With respect to the qualifications and conduct of Class Counsel, they have demonstrated that they satisfy Rule 23(a)(4), as detailed below in §IV.D., show the reasons they should be appointed Class Counsel under Rule 23(g).

### C.      The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23 authorizes class certification if "the court finds that the questions of law or fact common to Class Members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### 1.      Common Legal and Factual Questions Predominate for Plaintiffs' Claims

Rule 23(b)(3)'s requirement of predominance "'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009) (quoting *Amchem*, 521 U.S. at 623-24).  Of course requiring

common issues to predominate does not mean all issues must be common to every class member.[6] "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016).

Notably, "for purposes of inquiring into the predominance of questions of law and fact relevant to a settlement class, manageability issues that are of obvious concern for anticipated litigation consideration are not similarly relevant." *Processed Egg*, 2016 WL 3584632, at *8 (citing *Sullivan*, 667 F.3d at 303). As the Third Circuit has repeatedly explained, this is a "'key' distinction between certification of a litigation and settlement class." *Sullivan*, 667 F.3d at 306; *see also Cmty. Bank*, 418 F.3d at 306 (the predominance test is more readily satisfied when considering a settlement-only class because "the court certifying the class need not examine issues of manageability").[7]

Cases such as these are well-suited for class certification because Defendants' alleged conduct would have affected all Class Members in the same fashion. The Third Circuit has explained, antitrust cases "naturally raise several questions of law and fact common to the entire class and which predominate over any issues related to individual class members." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004); *Sullivan*, 667 F.3d at 298 (same); *accord*

---

[6]   *See, e.g.*, *Sullivan*, 667 F.3d at 301 ("We have never required the presentation of identical or uniform issues or claims as a prerequisite to certification of a class."); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 186 (D.N.J. 2003) ("mere existence of individual issues will not of itself defeat class certification"); *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 269 (D.D.C. 2002) ("Rule 23 (b)(3) requires that common issues predominate; it does not require that common issues be dispositive.").

[7]   Moreover, there are no issues requiring resolution that may arise in the context of applying various state laws in the settlement context. Indeed, "in the settlement context, variations in state antitrust, consumer protection and unjust enrichment laws [do] not present 'the types of insuperable obstacles' that could render class litigation unmanageable," as the settlement eliminates the need for a trial. *Sullivan*, 667 F.3d at 303.

*Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws.").  This Action is no exception.[8]

The same analysis and conclusion applies now and supports the conclusion that Plaintiffs' claims of anti-competitive conduct involve predominating common issues.

### 2.    A Rule 23(b)(3) Class Action Is Superior to Other Methods of Adjudication

Finally, Rule 23(b)(3) requires that a class action be "superior to other available methods fairly and efficiently adjudicating the controversy."[9]  Fed R. Civ. P. 23(b)(3).  Factors considered with regard to superiority include "the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action."  *NFL*, 821 F.3d at 434-35 (citing Fed. R. Civ. P. 23(b)(3)(A)-(D)).  At this juncture individualized issues related to proving antitrust impact at trial are no longer implicated and variations in state laws no longer defeat predominance as they are irrelevant in the settlement context.  *See Sullivan*, 667 F.3d at 303-04 (a settlement "obviates the difficulties inherent in proving the elements of varied claims at trial or in instructing a jury on varied state laws, and 'the difference is key'").

---

[8]    Common question also predominate as to antitrust impact. Plaintiffs seeking to certify an antitrust class must also establish "[a]ntitrust [i]mpact," which is the fact of damage resulting from an antitrust violation.  *Modafinil*, 837 F.3d at 262.  The injury must also be "'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'"  *Id.* at 263.  Paying higher prices because of an alleged monopoly is quintessential antitrust injury.  While, in the litigation context, plaintiffs must demonstrate that antitrust impact is capable of proof at trial through common classwide evidence (*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir. 2008), *as amended* (Jan. 16, 2009)); *Linerboard*, 305 F.3d at 152), in the class-settlement context, a plaintiff need not make such a showing since there will be in trial and, thus, no potential management-related questions to answer.  *See Processed Egg*, 2016 WL 3584632, at *8 (citing *Amchem*, 521 U.S. 591 and *Sullivan*, 667 F.3d 273).  In addition, damages need not be calculated prior to certification of a settlement class.

[9]    To determine superiority, a court must "'balance, in terms of fairness and efficiency, the merits of a class action against those of "alternative available methods" of adjudication.'"  *Flonase*, 284 F.R.D. at 234 (quoting *Georgine v. Amchem Prods.*, 83 F.3d 610, 632 (3d Cir. 1996) *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)).

The other factors in a superiority analysis all support a finding of superiority, as well. The Settlement here creates a resolution that achieves "'economies of time, effort, and expense, and promote . . . uniformity of decision . . . without sacrificing procedural fairness or bringing about other undesirable results.'" *Sullivan*, 667 F.3d at 336 (quoting *Amchem*, 521 U.S. at 615). This Settlement permits a large number of similarly situated indirect-purchaser Class Members to resolve their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. *See McDonough v. Toys R Us, Inc.*, 638 F. Supp. 2d 461, 478-79 (E.D. Pa. 2009) ("In this case, a class action would be more fair and efficient than alternative methods of adjudication. . . . Subclass members would have little economic incentive to litigate their claims individually – thus barring recovery for most absent a class action . . . .").

Without the Settlement these consumers and small plans would very likely get nothing. *See Amchem*, 521 U.S. at 617 (noting Rule 23 was contemplated for the "'rights of groups of people who individually would be without effective strength to bring their opponents into court at all'").

Indeed, courts within this district have recognized the superiority of class treatment in similar cases. For example, in *Wellbutrin XL*, the Court granted certification of indirect purchaser plaintiffs' claims that defendant unlawfully excluded generic versions of *Wellbutrin XL* through sham litigation. In doing so, the Court noted that: "Individual treatment of each class members' claims would require duplicative, expensive litigation, which would come at enormous expense to the parties and judicial economy. Class resolution would also avoid problems of inconsistent resolution." *Wellbutrin XL*, 282 F.R.D. at 145 (citing *Warfarin*, 391 F.3d at 529).[10]

---

[10] Because certification is sought in the settlement context, the Court need not confront the ascertainability or manageability issues. *In re Comcast Corp. Set-Top Cable*, 656 F. App'x 8, 9 (3d Cir. 2016) ("[T]he concern that '[t]he method of determining whether someone is in the class . . . be administratively feasible,' is not implicated [when there is a settlement] because the settlement

### D.      This Court Should Appoint Robbins Geller Rudman & Dowd LLP as Class Counsel

Pursuant to Rule 23(g), Plaintiffs move for an appointment of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.  Rule 23(g) focuses on the qualifications of Class Counsel, complementing the requirement of Rule 23(a)(4) that the representative parties adequately represent the interests of Class Members.  While a court may consider any factor concerning the proposed class counsel's ability to "fairly and adequately represent the interests of the class," Rule 23 specifically instructs a court to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed R. Civ. P. 23(g)(1)(A).

Here, each of Rule 23(g)(1)(A)'s considerations weighs strongly in favor of finding Robbins Geller adequate.  Robbins Geller did extensive work identifying and investigating the claims and committed substantial resources to pursuing a favorable outcome for the Settlement Class.  In addition, Robbins Geller has extensive experience handling complex class action litigation, including cases in the antitrust context.  *See* Bernay Decl., Ex. 2 at 2, 9-27.[11]

### V.      THE PROPOSED SETTLEMENT IS SUFFICIENTLY FAIR, REASONABLE, AND ADEQUATE TO WARRANT PRELIMINARY APPROVAL AND AUTHORIZE DISSEMINATION OF NOTICE

### A.      The Role of Preliminary Approval in the Settlement Evaluation Process

"Preliminary approval of a proposed class-action settlement is left to the discretion of the trial court and is based on an examination of whether the proposed settlement is 'likely' to be

---

agreement removes the need for a trial." (second alteration in original) (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) and citing *Sullivan*, 667 F.3d at 335)).

[11]   Robbins Geller's resume is attached as Exhibit 2 to the Bernay Decl.

approved under Rule 23(e)(2)." *Stechert*, 2021 WL 5235221, at *8. A court's evaluation of a proposed class action settlement typically involves a two-step process. First, "the parties submit the proposed settlement to the court, which must make a preliminary fairness evaluation." *In re NFL Players' Concussion Inj. Litig.*, 301 F.R.D. 191, 197 (E.D. Pa. 2014). Second, "after class members are notified of the settlement, the court holds a formal fairness hearing where class members may object to the settlement. . . . If the court concludes that the settlement is 'fair, reasonable and adequate,' the settlement is given final approval." *Id.*; *see also* Fed. R. Civ. P. 23(e) (establishing procedures for approval of a proposed settlement that require a court to make a preliminary approval determination, direct that notice of same be given and hold a hearing after such notice before determining that the settlement is "fair, reasonable and adequate").

At the preliminary approval stage, "'the court need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute.'" *Curiale v. Lenox Grp., Inc.*, No. 07-1432, 2008 WL 4899474, at *4 (E.D. Pa. Nov. 14, 2008) (quoting *Thomas v. NCO Fin. Sys.*, No. CIV.A.00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002)). Rather, as made clear by the recent amendments to Rule 23 governing the settlement of class actions, the court considers the likelihood that the proposed settlement will ultimately achieve approval, taking into account whether:

> (a)     the class representatives and class counsel have adequately represented the class;

> (b)     the proposal was negotiated at arm's length;

> (c)     the relief provided for the class is adequate, taking into account:

>> (i)     the costs, risks, and delay of trial and appeal;

>> (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)        the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)        any agreement required to be identified under Rule 23(e)(3); and

(d)        the proposal treats class members equitably relative to one another.

Fed. R. Civ. P. 23(e)(1) and (2).  If, taking these factors and the showings made regarding class certification into account, the court concludes that the proponents have shown that "the court will likely be able to: (i) approve the proposal [for settlement] under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal," the court "must direct notice in a reasonable manner to all class members who would be bound."  Fed. R. Civ. P. 23(e)(1).

In the Third Circuit, when deciding preliminary approval, courts have focused on whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *NFL*, 301 F.R.D. at 197-98; *see also In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (holding that the "preliminary determination establishes an initial presumption of fairness").  Additionally, it has long been the case that "[t]he preliminary approval determination requires the Court to consider whether '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Processed Egg Prods. Antitrust Litig.*, No. 828083, 2014 WL 828083, at *2 (E.D. Pa. Feb. 28, 2014) (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003)); *see also In re Cendant Corp.*

*Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001) (same).  These considerations align with the factors identified in Rule 23(e).[12]

Beyond these factors, in reviewing the proposed Settlement, the Court should consider that "'there is an overriding public interest in settling class action litigation, and it should therefore be encouraged.'"  *McDonough v. Horizon Blue Cross Blue Shield of N.J.*, 641 F. App'x 146, 150 (3d Cir. 2015) (quoting *Warfarin*, 391 F.3d at 535); *see also Curiale*, 2008 WL 4899474, at \*5.

### B.   Review of the Applicable Factors Favors Preliminary Approval of This Settlement

Consideration of the factors identified in Rule 23(e)(2) as relevant to determining whether a settlement proposal merits approval demonstrates that the Court will likely be able to grant approval to the Settlement, and so should preliminarily approve it.

### 1.   The Settlement Is the Product of Arms-Length Negotiations Conducted by Highly Experienced Antitrust Litigators Who Adequately Represented the Class and Were Informed by the Extensive Discovery Completed in This Case

The first two factors specified under Rule 23(e)(2) concern the adequacy of the representation and whether the proposal was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(A) and (B).  Here the record reflects that the extensive negotiations resulting in the Settlement were conducted at arm's length by advocates experienced in antitrust litigation and committed to the representation of the Class as demonstrated by their aggressive litigation of this Action.  As

---

[12]   At the final approval stage, courts in the Third Circuit have traditionally applied a more rigorous nine factor analysis to assess the fairness, adequacy, and reasonableness of the proposed class action settlement.  Specifically, applying *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) courts consider: "'(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risk of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation'" has traditionally carried.  *See also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005).  Many of these considerations are subsumed within the factors specified in Rule 23(e)(2) which are discussed herein.

demonstrated above, proposed Class Counsel have the requisite qualifications and experience to lead this Action on behalf of Plaintiffs. Indeed, Robbins Geller has decades of experience and a proven track record of success in highly complex antitrust class actions, such as this one. *See* Bernay Decl., Ex. 2.

Moreover, negotiations over the terms of the Settlement Agreement involved numerous telephone calls and email exchanges. For its part, Class Counsel analyzed the legal and factual challenges the putative Class faced going forward and conducted an in-depth analysis of the data, documents, and other discovery produced by Defendants, including the review of over 18 million pages of documents, as well as extensive additional written discovery and depositions. This allowed Class Counsel to make informed demands and evaluate the strengths and weaknesses of Defendants' positions. *Id.*, ¶¶6-7.

In addition, throughout the Action the Named Plaintiffs have remained committed to the Action and to advancing the interests of the Class. They provided responses to discovery requests, remained abreast of the Action, sat for deposition, and carefully considered the terms of the Settlement, which they support. *Id.*, ¶6. In sum, the factors identified in Rule 23(e)(2)(A)-(B) weigh strongly in favor of both preliminary and final approval.[13]

### 2. The Relief Provided Is Adequate and Will Be Fairly Allocated Using a Methodology Like that Approved and Used in Similar Cases

Rule 23(e)(2)(C) and (D) require the Court to consider the adequacy and fairness of the relief provided taking into account specified factors. These factors, too, strongly favor approval here.

---

[13]   Additionally, Class Counsel believe the Settlement is a fair resolution of the putative Class's claims against Defendants – a determination which has traditionally carried "'considerable weight'" with the court. *Esslinger v. HSBC Bank Nevada, N.A.*, No. 10-3213, 2012 WL 5866074, at *8 (E.D. Pa. Nov. 20, 2012) (quoting *McAlarnen v. Swift Transp. Co., Inc.*, No. 09-1737, 2010 WL 365823 (E.D. Pa. Jan. 29, 2010)); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) ("Significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interests of the class.").

### a. The Amount of the Relief Is Adequate, Especially Considering the Costs, Risks, and Delay of Trial and Appeal

The Settlement provides meaningful relief and was achieved following more than four years of active litigation at a juncture when the costs, risks and delay associated with trial and appeal weigh decidedly in favor of settlement.  Absent the settlement, Defendants would have vigorously contested the class certification and challenged the merits of Plaintiffs' claims, including through dispositive motions practice.  Litigating this Action through class certification, summary judgment and trial thus would be costly and the outcome thereof uncertain and remote.  In contrast, the proposed Settlement provides the certainty of a total of a $25,000,000 recovery to the Class now. This Settlement Amount is well within the range of other similar settlements.  *See* Appendix A hereto (reflecting settlements in other generic suppression antitrust cases by certified classes of end-payors).

### b. The Proposed Method of Processing Class-Member Claims and Distributing Relief to the Class Is Fair and Effective

As detailed in the Peak Declaration,[14] the method proposed for processing Class Member claims is consistent with that successfully applied in similar cases by the proposed Settlement Administrator. Peak Decl., ¶¶3-4.  The information and documentation to be provided by Class Members regarding their payments for Remicade will be reviewed by the Settlement Administrator, who is familiar with processing these types of claims and with the type of additional documentation that is available to support them and who will seek additional information as needed to verify and process the claims.  *Id.*, ¶¶25-27.  Once the Settlement Administrator has received, reviewed and processed all of the timely claims, they will generate an approved claims list based upon that review, provide that list to Class Counsel and make Distribution to Class Members with approved claims in

---

[14]   *See* Declaration of Carla A. Peak in Support of Settlement Notice Plan ("Peak Decl."), filed concurrently.

accordance with the Plan of Allocation and Distribution approved by the Court.  *Id.*, ¶¶28-30.  As described more fully below, the proposed Plan of Allocation and Distribution allocates the Net Settlement Fund in substantially the same manner as plans that have been approved, and fairly and efficiently implemented in similar cases.

**c.     The Additional Factors Related to the Adequacy of Relief Raise No Issues**

The final specified factors to be taken into account under Rule 23(e) concern the terms of any proposed attorney's fees awards and any agreements made in connection with the proposal that are not included within the settlement agreement(s).  Fed. R. Civ. P. 23(e)(2)(C)(iii) and (iv).  With regard to proposed attorneys' fees, Class Counsel may seek an award of up to one-third of the total Settlement Fund upon approval of the Court.  The proposed Notice also notifies members of the Class.[15]  Finally, Rule 23 requires that the Court consider whether the settlement "proposal treats class members equitably relative to one another."  Fed. R. Civ. P. 23(e)(2)(D).  As discussed in greater detail, below, in §V.C., concerning the proposed Plan of Allocation and Distribution, it is proposed that the proceeds of the Settlement be distributed in a fair and efficient manner to members of the Settlement Class.

In sum, the record presented shows that the Class was adequately represented and that the Settlement was achieved as the result of an arm's-length negotiation process informed by extensive litigation.  The Settlement Amount is well within the range of reasonableness and is proposed to be distributed in a manner that is fair, efficient and consistent with what has been done in analogous cases.  As such, the record presented shows that the Court will likely be able to approve the Settlement and, in conjunction with the sound basis for certification of the Class for Settlement

---

[15]   The proposed Notice also advises members of the Class that Counsel will request Service Awards for the class representatives who worked to obtain the excellent result here on behalf of the Class.  Such awards are appropriately awarded in this Action.  *See Wood*, 2020 WL 7711409, at *5 n.8.

- 19 -

purposes set forth above, supports preliminarily approval of the Settlement. *See* Fed. R. Civ. P. 23(e).

### C.     The Proposed Plan of Allocation and Distribution Is Fair, Reasonable and Adequate

The Court should approve the proposed Plan of Allocation and Distribution which sets forth how claims will be reviewed and processed, and how Settlement Fund will be allocated and disbursed. *See* Settlement Agreement, Ex. A, Plan of Allocation and Distribution. "'Approval of a plan of allocation of a settlement fund in a class action is "governed by the same standards of review applicable to the approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate."'" *Melhing v. N.Y. Life Ins. Co.*, 248 F.R.D. 455, 463 (E.D. Pa. 2008). Here, the Settlement Fund will be used to pay the Class's claims that have been processed and authorized by the Settlement Administrator in accordance with the Plan of Allocation and Distribution, after payment of administrative costs, any court-awarded Attorneys' Fees and Expenses and Plaintiffs' Service Awards. The Net Settlement Fund remaining after the approved deductions, will be allocated on a *pro rata* basis based on each Class Member's Recognized Claim. The allocation method recognizes that some class members reside in or made reimbursements in the Selected States,[16] which permit recovery of damages for indirect purchases in a manner that is precluded under the Sherman Antitrust Act under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). To the extent a Class Member resides outside of the Selected States, its remedies for purchases made outside of the Selected States would likely be limited to equitable relief. Each Class Member's Recognized Claim will therefore be determined as follows:

(a)     The Recognized Claim of Class Members that reside or have their principal place of business in one of the Selected States shall be the total dollars spent by that member to indirectly purchase or provide reimbursement for some or all of the purchase price of Remicade.

---

[16]   The Selected States are defined in the parties' Settlement Agreement.

(b)     The Recognized Claim of Class Members that do not reside or have their principal place of business in one of the Selected States but indirectly purchased or provided reimbursement for some or all of the purchase price of Remicade in one or more of the Selected States shall be the sum of:

(i)     The total dollars spent to indirectly purchase or provide reimbursement for some or all of the purchase price of Remicade in any of the Selected States; and

(ii)     The total dollars spent to indirectly purchase or provide reimbursement for some or all of the purchase price of Remicade outside of the Selected States multiplied by 0.01.

(c)     The Recognized Claims of Class Members of that do not reside or have their principal place of business in one of the Selected States and did not indirectly purchase or provide reimbursement for some or all of the purchase price of Remicade in any of the Selected States shall be the total dollars spent to indirectly purchase or provide reimbursement for some or all of the purchase price of Remicade multiplied by 0.01.

As the ability of members of the Class to recover is tied primarily to the laws of the Selected States, this Plan of Allocation and Distribution appropriately recognizes and reflects each Class Member's likely ability to recover should the case have been litigated to resolution.  For these reasons, the Plan of Allocation and Distribution should be approved.

## VI.     THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

Under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal" once the Court determines preliminary approval is warranted. Fed. R. Civ. P. 23(e)(1)(B).  "Rule 23(e) notice is designed to summarize the litigation and the settlement and 'to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation.'"  *Prudential*, 148 F.3d at 327. Here, and as this Court held in *Stechert*: "[T]he Individual Notice satisfies Rule 23 and due process.

The Individual Notice explains, in plain language, the genesis of the lawsuit, who the interested parties are, how the suit came to be settled, how Class Members' claims will be calculated, the process for making a claim, the process for opting out of the settlement, the process for objecting to the settlement, and the consequences of opting out or objecting to the settlement." *Stechert*, 2021 WL 5235221, at *10.

Here the proposed form of summary notice of Settlement (Settlement Agreement, Ex. C) and the form of Long-Form Notice of Settlement (*id.*, Ex. D) and the proposed Notice Program (delineated in ¶¶10-27 of the Peak Declaration), fully comply with the requirements of Rule 23(e)(2)(B). Notice will be disseminated by direct mail and publication in a variety of media as set forth in the proposed Notice Program. *See* Peak Decl., ¶¶10-24.

More specifically, the components of the proposed notice program include: (1) sending the Notice to potential members of the Class via first class mail using addresses obtained by Class Counsel, through a variety of means including the use of proprietary databases in possession of the Settlement Administrator and potentially pursuant to subpoenas which may be served upon entry of the Preliminary Approval Order, on large retail pharmacies and PBMs; (2) publication in consumer publications and a banner notice in digital media; (3) publication in digital media targeted to TPPs; and (4) notice through earned media. *See* Peak Decl., ¶¶10-24 (Proposed Notice Program).

A.   **The Proposed Class Notice Program Provides for a Reasonable Manner of Notice Calculated to Reach Class Members**

Since the parties are seeking to certify a Settlement Class, Rule 23(c)(2)'s notice requirements for class certification as well as Rule 23(e)'s notice requirements for settlement or dismissal are implicated. *Prudential*, 148 F.3d at 326-27. "There is no one 'right way' to provide notice as contemplated under Rule 23(e)." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. MDL 1559 4:03-MD-015, 2004 WL 3671053, at *8 (W.D. Mo. Apr. 20, 2004). "Notice of a settlement proposal need only be as directed by the district court . . . and reasonable enough to

satisfy due process." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995).   The

proposed notice program meets the requirements of Rules 23(c)(2) and 23(e).   *See* Fed. R. Civ. P.

23(c)(2) (the best notice practicable under the circumstances should include individual notice to all

members who can be identified through reasonable effort).

### B.     The Proposed Form of Class Notice Adequately Informs Class Members of Their Rights in This Action

The content of the proposed Notice and summary notice (collectively, the "Notices") comply

with the requirements of Rule 23(c)(2)(B).   They clearly state the nature of the Action and who is

included in the Settlement Class.   They explain that this is an antitrust action based on allegations

that the Defendants engaged in conduct directed at unlawfully maintaining their monopoly for

infliximab.   The Notices inform members of the Settlement Class of their rights and options.

Specifically, they are informed that their interests will be represented by Class Counsel, although

they may enter an appearance through their own counsel at their own expense.   They are informed

that they may request to be excluded from the Settlement Class and the legal ramifications of doing

so.   They are informed that Class Counsel may request and may be awarded attorneys' fees of up to

one-third of the Settlement Fund and reimbursement of expenses as well as Service Awards for the

Named Plaintiffs, at a later date, and how members of the Settlement Class can object to this and

other features of the Settlement.   The Notices also explain the binding effect of a class Judgment

under Rule 23(c)(3).   The members of the Settlement Class are instructed as to how they can obtain

copies of papers filed in the Action and how to contact Class Counsel if they have questions about

the Settlement or the Action in general.   Such notice complies with due process requirements.   *See,*

*e.g.*, *NFL*, 821 F.3d at 435; *Smithkline*, 2005 WL 950616, at *9-*10.

### C.     The Court Should Appoint Gilardi & Co., LLC, as Settlement Administrator

"Parties may use class notice experts or professional claims administrators to provide a class

notice and otherwise administer a settlement."   *Stechert*, 2021 WL 5235221, at *8 (citing Fed. R.

Civ. P. 23(c)(2) advisory committee's note to 2018 amendment).  Class Counsel requests that the Court appoint Gilardi & Co., LLC, a highly experienced and well-regarded firm that frequently handles settlement and claims administration in large complex class actions, as Settlement Administrator.  The experience and expertise of Gilardi & Co., LLC is reflected in the Peak Declaration and the detailed Proposed Class Action Notice Program that Gilardi & Co., LLC developed for this Action.  Peak Decl., Ex. 1; *id.*, ¶¶10-24.  Under Class Counsel's supervision, Gilardi & Co., LLC will oversee implementation of the Class Action Notice Program, claims processing, reporting on claim processing and Distribution of the proceeds of the Settlement upon Court approval.

## VII.   THIS COURT SHOULD APPROVE THE PROPOSED SCHEDULE FOR FINAL APPROVAL

Class Counsel propose that the Fairness Hearing be scheduled for a date at least 200 days from the date that the Preliminary Approval Order is entered and that the schedule for providing notice and completing the process for final approval as set forth in the Proposed Preliminary Approval Order be entered.  Pursuant to that schedule Notice will commence 60 days after the entry of the Preliminary Approval Order and be completed by 60 days after entry of the Preliminary Approval Order.  Opt-outs would be due 120 days after the entry of the Preliminary Approval Order.  Objections and claim forms would be due 120 days after entry of the Preliminary Approval Order, while the deadlines for the filing of submissions in support of Final Approval and applications for awards of Attorneys' Fees and Expenses, and plaintiffs' Service Awards would be before then (*i.e.*, 90 days after entry of the Preliminary Approval Order).

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order substantially in the form of the proposed Preliminary Approval Order: (1) Certifying a Settlement Class; (2) Granting Preliminary Approval of the Settlement Agreement; (3) Appointing Class

Counsel; (4) Appointing a Settlement Administrator and Escrow Agent; (5) Approving the Form and

Manner of Notice to the Settlement Class; (6) Preliminarily Approving the Plan of Allocation and

Distribution; and (7) Scheduling a Fairness Hearing.

Dated:  April 15, 2022                    Respectfully submitted,

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          PATRICK J. COUGHLIN (*pro hac vice*)
                                          DAVID W. MITCHELL (*pro hac vice*)
                                          BRIAN O. O'MARA (*pro hac vice*)
                                          ALEXANDRA S. BERNAY (*pro hac vice*)
                                          CARMEN A. MEDICI (*pro hac vice*)
                                          ARTHUR L. SHINGLER III (*pro hac vice*)


                                                 s/ Alexandra S. Bernay
                                          ALEXANDRA S. BERNAY

                                          655 West Broadway, Suite 1900
                                          San Diego, CA  92101
                                          Telephone:  619/231-1058
                                          619/231-7423 (fax)
                                          patc@rgrdlaw.com
                                          davidm@rgrdlaw.com
                                          bomara@rgrdlaw.com
                                          xanb@rgrdlaw.com
                                          cmedici@rgrdlaw.com
                                          ashingler@rgrdlaw.com

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          RANDI D. BANDMAN (*pro hac vice*)
                                          420 Lexington Avenue
                                          New York, NY  10170
                                          Telephone:  212/693-1058
                                          randib@rgrdlaw.com

                                          Plaintiffs' Interim Class Counsel

MILLER SHAH LLP
JAMES C. SHAH (#80337)
JAYNE A. GOLDSTEIN (#48048)
NATALIE FINKELMAN BENNETT (#57197)
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: 610/891-9880
866-300-7367 (fax)
jcshah@millershah.com
jagoldstein@millershah.com
nfinkelman@millershah.com

Interim Liaison Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on April 15, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Alexandra S. Bernay
ALEXANDRA S. BERNAY

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  xanb@rgrdlaw.com

# Mailing Information for a Case 2:17-cv-04326-KSM NATIONAL EMPLOYEES HEALTH PLAN v. JOHNSON & JOHNSON et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **SARA A. ARROW**
  sarrow@pbwt.com,mcolitigation@pbwt.com

- **GREGORY S. ASCIOLLA**
  gasciolla@dicellolevitt.com,8428016420@filings.docketbird.com,8567571420@filings.docketbird.com,asaldana@dicellolevitt.com

- **RANDI D. BANDMAN**
  randib@rgrdlaw.com,susanm@rgrdlaw.com

- **THOMAS O. BARNETT**
  tbarnett@cov.com

- **ASHLEY E. BASS**
  abass@cov.com

- **NATALIE FINKELMAN BENNETT**
  nfinkelman@millershah.com,smoss@millershah.com,pleadings@millershah.com

- **ALEXANDRA S. BERNAY**
  xanb@rgrdlaw.com,e_file_sd@rgrdlaw.com,dwatts@rgrdlaw.com

- **JEFFREY CAO**
  jcao@cov.com

- **WILLIAM F. CAVANAUGH , JR**
  wfcavanaugh@pbwt.com,mcolitigation@pbwt.com

- **AUSTIN BLAIR COHEN**
  acohen@lfsblaw.com

- **PATRICK J. COUGHLIN**
  patc@rgrdlaw.com,susanm@rgrdlaw.com

- **FRANK T. DAVIS , JR**
  ftd@fbdlaw.com

- **ROSS E. ELFAND**
  relfand@whitecase.com,jdisanti@whitecase.com,mco@whitecase.com,ogierke@whitecase.com

- **EMMA ELLMAN-GOLAN**
  eellmangolan@pbwt.com

- **JOSEPH GOLDBERG**
  jg@fbdlaw.com,ftd@fbdlaw.com,sdr@fbdlaw.com,drt@fbdlaw.com,acs@fbdlaw.com,vjw@fbdlaw.com

- **JAYNE A. GOLDSTEIN**
  jagoldstein@millershah.com,pleadings@millershah.com

- **NICHOLAS T. HART**
  nick@harrisonhartlaw.com,carter@harrisonhartlaw.com

- **JONATHAN H. HATCH**
  jhatch@pbwt.com

- **LESLIE E. JOHN**
  john@ballardspahr.com,LitDocket_East@ballardspahr.com,omalleyLB@ballardspahr.com

- **JEFFREY F. KINKLE**
  jkinkle@pbwt.com

- **NOLAN C. KNIGHT**
  nknight@munsch.com,aberry@munsch.com

- **GEORGE A. LOBIONDO**
  globiondo@pbwt.com

- **ADEEL A. MANGI**
  aamangi@pbwt.com,mcolitigation@pbwt.com

- **ABIGAIL E. MARION**
  amarion@pbwt.com,mcolitigation@pbwt.com

- **CARMEN A. MEDICI**
  cmedici@rgrdlaw.com,slandry@rgrdlaw.com,e_file_sd@rgrdlaw.com,ckopko@rgrdlaw.com

- **DAVID W. MITCHELL**
  DavidM@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **BRIAN O. O'MARA**
  bomara@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **CHARLES R. PEIFER**
  cpeifer@peiferlaw.com,mjackson@peiferlaw.com,wboyd@peiferlaw.com,mlaforgelara@peiferlaw.com,igarcia@peiferlaw.com,charrison@peiferlaw.com

- **SCOTT E. PERWIN**
  sperwin@knpa.com,aneill@knpa.com,dwilliams@knpa.com,mmitchell@knpa.com

- **ARTHUR L. SHINGLER , III**
  ashingler@rgrdlaw.com

- **DENNIS STEWART**
  dstewart@gustafsongluek.com,DJakubauskiene@gustafsongluek.com

- **WHITNEY E. STREET**
  WhitneySt@hbsslaw.com,whitney-street-0082@ecf.pacerpro.com,jeff@blockesq.com

- **STEPHANIE TEPLIN**
  steplin@pbwt.com,mcolitigation@pbwt.com

- **VINCENT J. WARD**
  vjw@fbdlaw.com

- **CAROL WEILAND**
  cweiland@cov.com

- **ELIZABETH WINGFIELD**
  wingfielde@ballardspahr.com,elizabeth.victoria.wingfield@gmail.com

- **DANHUI XU**
  dxu@pbwt.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
JONAH          M. KNOBLER
PATTERSON BELKNAP WEBB & TYLER LLP
1133 AVENUE OF AMERICAS
NEW YORK, NY 10036
```