# EXHIBIT 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re REMICADE ANTITRUST LITIGATION | ) | Civil Action No. 2:17-cv-04326-KSM |
| | ) | **(Consolidated)** |
| | ) | |
| This Document Relates To: | ) | <u>CLASS ACTION</u> |
| | ) | |
| INDIRECT PURCHASER ACTIONS. | ) | The Honorable Karen S. Marston |
| | ) | |
| | ) | STIPULATION OF CLASS ACTION SETTLEMENT |

This Stipulation of Class Action Settlement, including all Exhibits attached hereto (collectively, the "Settlement Agreement") is entered into as of April 15, 2022 by and among Robbins Geller Rudman & Dowd LLP on behalf of plaintiffs Local 295 IBT Employer Group Welfare Fund and National Employees Health Plan (the "Named Plaintiffs" or "Plaintiffs," as defined below in ¶1.19) and all others similarly situated (the "Class," as defined below in ¶1.6), on the one hand; and defendants Johnson & Johnson and Janssen Biotech, Inc. ("Defendants," as defined below in ¶1.7), on the other hand.  Defendants and the Named Plaintiffs are referred to herein individually as "Party" and collectively as the "Parties."

Together the Named Plaintiffs, the Class, and Defendants are referred to for purposes of this Settlement Agreement as the "Settling Parties."

## I.    THE LITIGATION

In late summer and early autumn 2017, three putative class indirect-purchaser antitrust actions were filed against Defendants, alleging violation of various state and federal antitrust and state consumer-protection laws related to Defendants' alleged anticompetitive conduct in the market for its infliximab biologic, Remicade.  On November 21, 2017, these actions were consolidated under the caption *In re Remicade Antitrust Litigation*, No. 2:17-cv-04326 (consolidated) (E.D. Pa.).  On January 22, 2018, the Court appointed Interim Class and Interim Liaison Counsel for the putative indirect-purchaser class.  On February 21, 2018, a Consolidated Amended Complaint was filed on behalf of the putative class.  On December 7, 2018, the Court denied in part and granted in part Defendants' motion to dismiss the Consolidated Amended Complaint.

Remicade was approved by the FDA in 1998 to treat Crohn's disease.  Since its initial FDA approval, Remicade has also been approved for the treatment of other autoimmune disorders including ulcerative colitis, rheumatoid arthritis, ankylosing spondylitis, arthritis, and plaque

psoriasis. For almost two decades while being protected by patent, Remicade was the only infliximab product on the U.S. market. Plaintiffs' central allegation is that Remicade had a dominant market position and that Defendants abused that dominant position to suppress competition in the infliximab market through exclusionary contracts with health insurers and healthcare providers, alongside additional alleged anticompetitive conduct. Defendants deny Plaintiffs' allegations and maintain that they acted appropriately to compete in the market for Remicade at all times, and did not engage in any anticompetitive conduct.

Over the course of over four years of hard-fought litigation, the Parties engaged in extensive fact and expert discovery, including exchanging and analyzing in excess of approximately 18 million pages of party and non-party documents and data, serving and responding to 32 interrogatories and requests for admission, responding to multiple document requests, conducting 32 depositions of Parties and non-parties, including depositions of representatives of the Named Plaintiffs, and preparing for the exchange of expert reports and disclosures. Discovery was consolidated with two related actions, *Pfizer Inc. v. Johnson & Johnson*, No. 2:17-cv-04180-KSM (E.D. Pa.) ("*Pfizer* Action"), and *Walgreen Co. v. Johnson & Johnson*, No. 2:18-cv-02357-KSM (E.D. Pa.) ("*Retailer* Action").

## II.     THE DEFENDANTS' DENIAL OF WRONGDOING AND LIABILITY

Defendants contend that the claims and allegations of wrongdoing or liability by the Named Plaintiffs and the Class in the Action are without merit. Defendants expressly deny all allegations of wrongdoing or liability. Further, the Settling Parties' agreement as to certification of the Class is only for purposes of effectuating a Settlement and for no other purpose. Defendants retain all of their objections, arguments and/or defenses with respect to class certification if the Settlement Agreement does not receive approval or is terminated for any reason. The Settling Parties acknowledge that there has been no stipulation to a class or certification of a class for any purposes

- 2 -

other than effectuating the Settlement, and that if the Settlement Agreement does not receive final approval or is terminated for any reason, this Settlement Agreement as to certification of the Settlement Class becomes null and void *ab initio* and no Party may cite this Settlement Agreement or any related document or filing in support of an argument for certifying a class for any purpose related to the Action or the Released Claims.

It is expressly agreed that neither this Settlement Agreement, nor any document referred to herein, nor any action taken to carry out this Settlement Agreement, is, may be construed as, or may be used as an admission by the Defendants of any fault, wrongdoing or liability whatsoever with respect to the subject matter of the Action.

## III.    THE BENEFITS OF SETTLEMENT

Following the dismissal with prejudice of the *Pfizer* and *Retailer* Actions, the Parties to this Action engaged in several weeks of arm's-length settlement negotiations.  On February 28, 2022, Named Plaintiffs and Defendants agreed to settle the Action in exchange for a cash payment of $25,000,000 for the benefit of the indirect-purchaser Class, and other terms as further described below.

The Settling Parties know that further prosecution and defense of the Action would be protracted and expensive and, having taken into account the uncertainty and risks inherent in any such litigation, have determined that it is desirable to compromise and settle all claims in the Action with respect to the Class described in this Settlement Agreement and to proceed to seek approval, implementation of and administration of this Settlement in the Eastern District of Pennsylvania.

The Named Plaintiffs, on behalf of themselves and as representatives of the Class, and the Defendants have worked to resolve their differences, and have elected to settle those differences

under the terms of this Settlement Agreement rather than continue litigating their respective positions to conclusion.

The Settling Parties intend by this Settlement Agreement to resolve all claims of the Class against the Defendants, and vice versa, and to resolve all other Plaintiffs' Released Claims and Defendants' Released Claims (as defined below) in accordance with the terms of this Settlement Agreement.

## IV.    TERMS OF AGREEMENT

NOW, THEREFORE, the Named Plaintiffs, on behalf of themselves and as representatives of the Class, the Class, and the Defendants, in consideration of the execution of this Settlement Agreement, the mutual promises contained herein, the benefits to be received hereunder and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all Settling Parties, hereby agree as follows:

### 1.    Definitions

The following terms and phrases shall have the following meanings under the provisions of this Settlement Agreement, whether used in the singular or plural, and whether in the possessive or non-possessive:

1.1    "Action" means *In re Remicade Antitrust Litigation*, No. 2:17-cv-04326-KSM (E.D. Pa.).

1.2    "Attorneys' Fees and Expenses" means: (a) payment to Class Counsel of attorneys' fees and litigation expenses and charges (including expert and consulting fees) in an amount to be determined by the Court; and (b) payment of Service Awards to Named Plaintiffs, in an amount to be determined by the Court.  Attorneys' Fees and Expenses shall be paid from the Settlement Fund.

1.3    "Class Counsel" means Robbins Geller Rudman & Dowd LLP.

- 4 -

1.4    "Class Member" means a person or entity who remains in the putative Class, *i.e.*, a member of the Class who does not opt-out.  For the avoidance of doubt, each Named Plaintiff is a Class Member.

1.5    "Class Period" means from April 5, 2016 through February 28, 2022.

1.6    "Class" means the following Class:

All persons and entities in the United States and its territories, as defined herein, who indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price of Defendants' infliximab during the Class Period.

The following groups are excluded from the Class:

(a) Defendants, their officers, directors, management, employees, subsidiaries and affiliates; (b) all federal and state governmental entities except for cities, towns or municipalities with self-funded prescription drug plans; (c) all persons or entities who purchased Defendants' infliximab for purposes of resale or who purchased infliximab directly from Defendants; (d) fully insured health plans (*i.e.*, health plans that purchased insurance covering 100% of their reimbursement obligation to members); (e) any "flat co-pay" consumers whose purchases of Defendants' infliximab were paid in part by a third-party payor and whose co-payment was the same regardless of the retail purchase price; (f) pharmacy benefit managers; (g) any judges or justices involved in this Action and any members of their immediate families; and (h) any providers (including but not limited to hospitals, clinics, and physicians) who purchase Remicade and are later reimbursed for the provision of Remicade.

1.7    "Defendants" means Johnson & Johnson and Janssen Biotech, Inc.

1.8    "Defendants' Counsel" means Patterson Belknap Webb & Tyler LLP and Covington & Burling LLP.

1.9    "Defendants' Released Claims" means the Defendants' release of Plaintiffs' Released Persons, and all other members of the Class, of all claims, demands, actions, causes of action, allegations, rights, obligations, costs, losses, and damages arising in whole or in part from or in connection with the acts or omissions of any of the Plaintiffs' Released Persons of any and every kind or nature, whether in law or in equity, in tort or contract, or arising under any statute or regulation, whether known or Unknown Claims, based upon the institution, prosecution, or

- 5 -

Settlement of the claims asserted in the Action, except for claims relating to the enforcement of the Settlement.

1.10    "Defendants' Released Persons" means Johnson & Johnson and Janssen Biotech, Inc. and their respective legal representatives, predecessors, successors and assigns, present and former subsidiaries and affiliated entities, present and former employees, partners, agents, representatives, independent contractors, officers, directors, shareholders, attorneys, accountants, managers, and all other legally associated persons or entities.

1.11    "Distribution" means a check or electronic disbursement payable to the order of a Class Member as the distribution of the Class Member's share of the Net Settlement Fund pursuant to the approved Plan of Allocation and Distribution.  The Settlement Administrator shall cause to be issued and mailed checks or arrange for the electronic disbursement to the Class Members as identified on the Summary Final Distribution Report in the amounts shown thereon.

1.12    "Distribution Date" means the date on which the Distributions or electronic payments are first mailed or provided to Class Members.  Except as to any interim disbursements for class notice and settlement administration costs, no disbursements shall be made to Class Members until the Effective Date.

1.13    "Effective Date" means the date on which the Judgment becomes Final and Non-Appealable.

1.14    "Escrow Account" means the interest-bearing account controlled by the Escrow Agent into which Defendants shall deposit or cause their insurance carriers to deposit the sum of $25,000,000 on behalf of Defendants.

1.15    "Escrow Agent" means Huntington Bank.

1.16    "Fairness Hearing" means the proceedings to be held before the Court to determine whether the Settlement should be approved as fair, reasonable and adequate pursuant to Rule

- 6 -

4887-2195-9960.v2

23(e)(2) of the Federal Rules of Civil Procedure; whether the Judgment should be entered; and whether the motion for award of Attorneys' Fees and Expenses should be granted.

    1.17   "Final and Non-Appealable" means, with respect to the Judgment approving this Settlement Agreement and the proposed class settlement contemplated under this Settlement Agreement, when the Judgment has been entered and the time has expired to file: (a) a notice of appeal; or (b) any motion which would legally extend the time to appeal the Judgment, or which challenges or seeks reconsideration, modification or vacation of the Judgment.  If a notice of appeal is filed, the Judgment becomes Final and Non-Appealable when the appellate court enters an order or judgment dismissing or overruling the relief requested and that order or judgment itself becomes final and no longer subject to further review in any court.  For the avoidance of doubt, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued solely with respect to: (i) the Plan of Allocation and Distribution (as submitted or subsequently modified); or (ii) Attorneys' Fees and Expenses, shall not in any way delay or preclude the judgment from becoming Final and Non-Appealable.

    1.18   "Judgment" means the order of the District Court approving this Settlement in accordance with the terms of this Settlement Agreement, substantially in the form of Exhibit E attached hereto.

    1.19   "Named Plaintiffs" or "Plaintiffs" means collectively: Local 295 IBT Employer Group Welfare Fund and National Employees Health Plan.

    1.20   "Net Settlement Fund" means the Settlement Fund less: (a) Attorneys' Fees and Expenses, including Service Awards, as awarded by the Court; (b) Notice and Administration Expenses; (c) Taxes and Tax Expenses; and (d) other Court-approved deductions.

    1.21   "Notice" means the Notice of Settlement of Class Action substantially in the forms of Exhibits C and D attached hereto.

1.22    "Notice and Administration Expenses" means the reasonable expenses incurred or charged in connection with the following, as approved by the Court:

(a)    Efforts to obtain current and accurate information regarding the identities and addresses of Class Members;

(b)    The reasonable costs associated with mailing, emailing, and publication of the Notice (including, but not limited to, the cost to print the Notices, mail or email the Notices, and publish the Notices, as well as making certain efforts to locate Class Members whose mailings are returned undelivered);

(c)    Maintenance of a dedicated Settlement website to facilitate communications with Class Members and to provide access to Settlement-related documents and information;

(d)    Responding to telephone and electronic inquiries regarding the Settlement by Class Members;

(e)    Implementation of the Plan of Allocation and Distribution (including, but not limited to, the cost to provide disbursements, and the cost of experts to calculate the allocation and distribution);

(f)    Costs of preparing and mailing Distribution Checks or electronic Distribution and tax documentation to members of the Class; and

(g)    Any other reasonable fees and expenses of the Settlement Administrator.

1.23    "Opt-Out Deadline" means the date by which members of the Class must elect to opt-out of the Class as set forth in the Preliminary Approval Order, if such opt-out is permitted by the Court.

1.24    "Plaintiffs' Related Parties" means Named Plaintiffs' respective legal representatives, heirs, executors, administrators, beneficiaries, trustees, predecessors, successors in interest, transferees and assignees, in their capacities as such.

- 8 -

1.25    "Plaintiffs' Released Claims," unless otherwise specifically excluded herein, means any and all claims, demands, damages, harm, injuries, actions, causes of action, suits, proceedings, matters, or disputes, of any kind whatsoever, whether known or unknown, suspected or unsuspected, accrued or unaccrued, and contingent or non-contingent, which now exist or have existed upon any theory of law or equity (whether contractual, common law, statutory, federal, state, local, or otherwise, including but not limited to any claims for compensatory or punitive damages, or for attorneys' fees, costs, or disbursements of any kind) against Defendants arising prior to February 28, 2022 that relate in any way to any antitrust, unfair competition, consumer protection, Lanham Act or similar common law cause of action regarding Remicade, Inflectra, or any other infliximab product that was asserted or could have been asserted based on the facts alleged in the Action or based on alleged misleading promotional activities by Defendants relating to Remicade or any infliximab biosimilars that were the subject of discovery in the Action.

1.26    "Plaintiffs' Released Persons" means the Named Plaintiffs and Class Members and the Plaintiffs' Related Parties.

1.27    "Plan of Allocation and Distribution" means the methodology for allocating and distributing the Net Settlement Fund to Class Members attached as Exhibit A hereto.

1.28    "Preliminary Approval Order" means the order (or orders) of the Court: (a) preliminarily approving this Settlement Agreement; (b) approving the Settlement Administrator; (c) approving the form and manner of disseminating the Notice to Class Members; and (d) scheduling a Fairness Hearing.  The Preliminary Approval Order shall also provide that if this Settlement Agreement is not approved, is voided, terminated, or fails to become effective for any reason the Settling Parties shall be returned to the *status quo* that existed immediately prior to the date of execution of this Settlement Agreement.  The Preliminary Approval Order shall be substantially in the form of the order attached hereto as Exhibit B.

1.29    "Released Persons" means Defendants' Released Persons and Plaintiffs' Released Persons.

1.30    "Released Claims" means Defendants' Released Claims and Plaintiffs' Released Claims.

1.31    "Selected States" means Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

1.32    "Service Awards" means a payment, to be approved by the Court, to Plaintiffs in their capacity as Class Representatives to compensate them for their work on behalf of the Class, including participating in the litigation, performing work in support of the litigation, and undertaking the risks of litigation.

1.33    "Settlement" means the settlement between the Settling Parties in the Action on the terms and conditions set forth in this Settlement Agreement.

1.34    "Settlement Administrator" means Gilardi & Co., LLC.  This entity will administer this Settlement Agreement and the Plan of Allocation and Distribution.

1.35    "Settlement Amount" means $25,000,000 in cash to be paid by wire transfer or check sent by overnight mail to the Escrow Agent pursuant to ¶1.15 of this Settlement Agreement.

1.36    "Settlement Fund" means the Settlement Amount, plus all interest and accretions thereto.

1.37    "Summary Final Distribution Report" means the summary chart prepared by Class Counsel or the Settlement Administrator to show the Distribution of the Net Settlement Fund to each member of the Class for whom an address and amount of Distribution can be determined. Defendants agree to provide Named Plaintiffs with data which identifies Class Members with

- 10 -

which Defendants have contracts to the extent Class Counsel makes reasonable requests for such information.  Class Counsel will not be responsible for or involved with the calculation of or Distribution from the Summary Final Distribution Report.

1.38    "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority.

1.39    "Undistributed Proceeds" means that portion of the Net Settlement Fund that remains after all Distributions pursuant to the Plan of Allocation and Distribution are completed. The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement.  Once the Settlement becomes Final and Non-Appealable, the Defendants shall have no ability to get back any of the Settlement Amount, including any Undistributed Proceeds.

1.40    "Unknown Claims" means: (a) any Plaintiffs' Released Claims that Named Plaintiffs or any Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Defendants' Released Persons which, if known by him, her or it, might have affected such Named Plaintiff's or Class Member's settlement or decisions with respect to the Settlement, including, but not limited to, the release of the Defendants' Released Persons or the decision not to object to or opt-out of this Settlement; and (b) any Defendants' Released Claims that Defendants do not know or suspect to exist in his, her, or its favor at the time of the release of the Plaintiffs' Released Persons, which if known by him, her or it, might have affected his, her or its settlement and release of Plaintiff Class Representatives, the Class and Class Counsel.  With respect to: (i) any and all Plaintiffs' Released Claims against the Defendants' Released Persons and (ii) any and all Defendants' Released Claims against Plaintiffs' Released Persons, the Settling Parties stipulate and agree that, upon the Effective Date, they shall expressly waive, and each of the Class Members shall be deemed to have waived, and by operation of the Judgment shall have

- 11 -

expressly waived, any and all provisions, rights, and benefits conferred by the law of any state or territory or other jurisdiction or principle of common law or foreign law that is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Settling Parties and the Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but the Settling Parties shall expressly fully, finally, and forever settle and release, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Settling Parties acknowledge, and Class Members shall be deemed by operation of law (including by operation of the Judgment) to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement.

1.41   "Unlocated Class Member" means: (a) a Class Member who is not identifiable; or (b) a Class Member who is identifiable, but whose accurate address is not ascertainable or has not been located despite reasonable and diligent efforts of the Settlement Administrator to do so in the event the United States Postal Service returns the Notice mailed to any Class Member.

4887-2195-9960.v2

2.      **The Settlement**

a.      **The Settlement Amount**

2.1      Payment by the Defendants.  Within 15 business days of the Preliminary Approval Order, the Defendants will deposit the Settlement Amount into the Escrow Account.  No disbursements shall be made to Class Members until the Effective Date.  If this Settlement Agreement is not approved, is voided, terminated, or fails to become effective for any reason: (a) the balance in the Settlement Fund, including interest accrued thereon and less Notice and Administration Expenses actually paid or incurred, Taxes and Tax Expenses, shall be promptly returned to the Defendants; and (b) the Settling Parties shall be returned to the *status quo* that existed in the Action immediately prior to the date of execution of this Settlement Agreement.

2.2      The obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition and settlement of all the Released Claims.  The Settlement Amount paid by the Defendants is their sole monetary responsibility under this Settlement Agreement, and Class Members who do not timely seek to exclude themselves from the Class shall not look to any of the Defendants' Released Persons for satisfaction of any and all Plaintiffs' Released Claims.  The Defendants are not responsible for payment of Attorneys' Fees and Expenses, Notice and Administration Expenses, or any out-of-pocket expenses, other than out of the Settlement Amount, as provided herein.

b.      **The Escrow Agent**

2.3      The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶2.1 in United States Agency or Treasury Securities or other instruments backed by the Full Faith & Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  All risks related to the investment

- 13 -

of the Settlement Fund shall be borne by the Settlement Fund.  The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

2.4     The Escrow Agent shall not disburse the Settlement Fund except as provided in the Settlement Agreement, by an order of the Court, or with the written agreement of Class Counsel and the Defendants' Counsel.

2.5     Subject to further order(s) and/or directions as may be made by the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Settlement Agreement.  Defendants' Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

2.6     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Settlement Agreement and/or further order(s) of the Court.

### c.     Taxes

2.7     The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1.  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this section, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary Parties, and thereafter to cause the appropriate filing to occur.

2.8     For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  Class Counsel shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)).  Such returns (as well as the election described in ¶2.7 hereof) shall be consistent with this section and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.9 hereof.  Defendants' Released Persons shall have no responsibility or liability for the Settlement Fund's tax returns or other filings.

2.9     All: (a) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Persons or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes; and (b) expenses and costs incurred in connection with the operation and implementation of this section (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described here) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events Defendants' Released Persons, the Settling Parties, and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from Distribution to Class Members any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes

and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)); neither the Defendants' Released Persons nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses.  The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this section.

> **d.    Refund of Settlement Payment Upon Termination of Settlement**

2.10    In the event that the Settlement Agreement is not approved or is terminated, canceled, or fails to become effective for any reason, the Settlement Fund less Notice and Administration Expenses or Taxes or Tax Expenses paid, incurred, or due and in connection with the Settlement provided for herein, shall be refunded pursuant to written instructions from Defendants' Counsel in accordance with ¶6.3 herein.

**3.    Preliminary Approval Order, CAFA Notice, and Fairness Hearing**

3.1    Promptly after execution of the Settlement Agreement, Class Counsel shall submit the Settlement Agreement together with its Exhibits to the Court and shall apply for entry of the Preliminary Approval Order, requesting, among other things, the preliminary approval of the Settlement set forth in the Settlement Agreement, and approval for the Notice, substantially in the form of Exhibit C attached hereto.  The Notice shall include the general terms of the Settlement set forth in the Settlement Agreement, a description of the proposed Plan of Allocation and Distribution, the general terms of the application for a Fee and Expense Award, and the date of the Fairness Hearing.

3.2    Class Counsel shall request that after notice is given, the Court hold the Fairness Hearing and approve the Settlement of the Action as set forth herein.  At or after the Fairness Hearing, Class Counsel also will request that the Court approve the proposed Plan of Allocation

and Distribution and the application for an award of Attorneys' Fee and Expense, including Named

Plaintiffs' request for Service Awards in connection with their representation of the Class.

3.3     Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1715, *et seq.*

("CAFA"), no later than ten calendar days after this Settlement Agreement is filed with the Court,

the Defendants shall serve or cause to be served proper notice of the proposed Settlement upon

those who are entitled to notice pursuant to CAFA.  The Defendants are solely responsible for the

costs of the CAFA notice and administering the CAFA notice.

**4.      Releases and Dismissal**

4.1     Upon the Effective Date, all Class Members shall be deemed to have, and by

operation of the Judgment shall have, fully, finally, and forever released, relinquished, and

discharged all Plaintiffs' Released Claims against the Defendants' Released Persons, whether or

not such Class Member shares in the Settlement Fund.  Claims to enforce the terms of this

Settlement Agreement are not released.

4.2     Upon the Effective Date, all Class Members and anyone claiming through or on

behalf of any of them, will be forever barred and enjoined from commencing, instituting,

prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity,

arbitration tribunal, or administrative forum, asserting the Plaintiffs' Released Claims against any

of the Defendants' Released Persons.

4.3     Upon the Effective Date, each of the Defendants' Released Persons shall be deemed

to have, and by operation of the Judgment shall have, fully, finally, and forever released,

relinquished, and discharged all Defendants' Released Claims against Plaintiffs' Released Persons,

including Class Counsel.  Claims to enforce the terms of this Settlement Agreement are not

released.

4.4     Upon the Effective Date, and in consideration of the promises set forth in this Settlement Agreement, including payment of the Settlement Fund, the Settling Parties and their counsel shall dismiss the Action with prejudice as to the Defendants.

**5.      Administration and Distribution of the Settlement Fund**

5.1     The Settlement Administrator, subject to such supervision and direction of Class Counsel, and as may be necessary or as circumstances may require, the Court, shall administer and calculate the Distribution Checks or electronic disbursements paid to Class Members and shall oversee Distribution of the Net Settlement Fund to Class Members.

5.2     The Settlement Fund shall be applied as follows:

(a)     to pay all Notice and Administration Expenses;

(b)     to pay the Taxes and Tax Expenses described in ¶¶2.7-2.9 hereof;

(c)     to pay Attorneys' Fees and Expenses to Class Counsel, including to pay Service Awards to Named Plaintiffs, to the extent allowed by the Court; and

(d)     after the Effective Date, to distribute the Net Settlement Fund to Class Members as allowed by the Settlement Agreement, the Plan of Allocation and Distribution, or the Court.

5.3     Each Class Member who has not timely and properly elected to opt-out of this Settlement shall be a Class Member and shall be eligible to receive a Distribution from the Net Settlement Fund according to the Plan of Allocation and Distribution.

5.4     After the Effective Date, and in accordance with the terms of the Settlement Agreement, the Plan of Allocation and Distribution, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Class Members, subject to and in accordance with the following ¶¶5.5-5.11.

4887-2195-9960.v2

5.5     Any distribution of monies or funds to Class Members shall be in accordance with the Plan of Allocation and Distribution approved by the Court.  The Defendants shall not be responsible or liable for any aspect of the allocation methodology set forth in the Plan of Allocation and Distribution or the implementation of that methodology.

5.6     The Defendants and the Named Plaintiffs agree that the Net Settlement Fund shall be only for the benefit of the Class (subject requests for Attorneys' Fees and Expenses, Service Awards and the other distributions and dispositions provided for in this Settlement Agreement), which by definition does not include those who timely and properly opt-out of the Class after receiving the Notice as contemplated under this Settlement Agreement.

5.7     The Defendants, Defendants' Counsel, Named Plaintiffs and Class Counsel shall provide reasonable cooperation to the Settlement Administrator in connection with the information reasonably needed by them in order to perform the activities contemplated under this Settlement Agreement, including the dissemination of the Notice and the implementation of the Plan of Allocation and Distribution.

5.8     The Net Settlement Fund shall be distributed to Class Members substantially in accordance with the Plan of Allocation and Distribution set forth in the Notice and approved by the Court.  If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the initial Distribution of the Net Settlement Fund, Class Counsel shall, if feasible, reallocate (which reallocation may occur on multiple occasions) such balance among those Class Members, who cash their initial Distribution Check and who would receive a Distribution of at least $10.00, in an equitable and economic fashion.  Thereafter, any *de minimis* balance which still remains in the Net Settlement Fund shall be donated to the Crohn's & Colitis Foundation, or one or more other non-sectarian, not-for-profit, 501(c)(3) organization(s) to be determined by Class Counsel and approved by the Court.

4887-2195-9960.v2

5.9     This Settlement is not a claims made settlement and, if all conditions of the Settlement Agreement are satisfied and the Settlement becomes Final and Non-Appealable, no portion of the Settlement Fund will be returned to Defendants.  The Defendants shall have no responsibility for, interest in, or liability whatsoever with respect to the Distribution of the Net Settlement Fund, the Plan of Allocation and Distribution, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.  No person shall have any claim of any kind against the Defendants' Released Persons with respect to the matters set forth in ¶¶1.25, 1.40, 4.1-4.4 hereof.

5.10    Defendants and Defendants' Released Persons have no responsibility for allocation or Distribution of settlement proceeds, whether to the Class Members or to Class Counsel.

5.11    No Person shall have any claim against any Released Persons, the Settlement Administrator or other entity designated by Class Counsel based on Distributions made substantially in accordance with the Settlement Agreement and the Settlement contained herein, the Plan of Allocation and Distribution, or further order(s) of the Court.  This does not include any claim by any Party for breach of this Settlement Agreement.

**6.      Class Counsel's Attorneys' Fees and Expenses**

6.1     Class Counsel may submit an application or applications for: (a) an award of attorneys' fees; plus (b) expenses or charges in connection with prosecuting the Action; plus (c) any interest on such Attorneys' Fees and Expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award").  In addition, Named Plaintiffs may request Service Awards in connection with their representation of the Class.  Class Counsel reserve the right to make additional applications for fees and expenses incurred.

6.2     The fees and expenses, as awarded by the Court, shall be paid to Class Counsel by the Escrow Agent from the Settlement Fund, as ordered, within ten calendar days after the Court executes the Judgment and an order awarding such fees and expenses.

6.3     In the event that the Effective Date does not occur, or the Judgment or the order granting the Fee and Expense Award is reversed or modified, or the Settlement Agreement is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes Final and Non-Appealable, and in the event that the Fee and Expense Award has been paid to any extent, then Class Counsel who received any payment of the Fee and Expense Award shall be obligated, within ten calendar days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction, to refund to the Settlement Fund such fees and expenses previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or modification. Each such Class Counsel's law firm receiving fees and expenses, as a condition of receiving the Fee and Expense Award, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing this provision, and are each severally liable and responsible for any required repayment.

6.4     Any Attorneys' Fees and Expenses, including any Fee and Expense Award, awarded by the Court shall be paid solely from the Settlement Fund.  The Defendants' Released Persons have no responsibility for any payment of Attorneys' Fees and Expenses to Class Counsel, or Named Plaintiffs, or any Class Member.

4887-2195-9960.v2

7.     **Failure to Obtain Approval of Settlement or Termination of Settlement**

7.1     This Settlement Agreement will automatically terminate if the Court enters an order denying approval of the Settlement (without an opportunity to resubmit) or if an appellate court denies approval of the Settlement and such order becomes Final and Non-Appealable.

7.2     Defendants have the right and option, in their sole discretion, to withdraw from and terminate the Settlement in the event that certain identified members of the Class opt-out from the Settlement on or before the Opt-Out Deadline.  Named Plaintiffs must notify Defendants of any such opt-outs within 5 business days of receiving the opt-out request.  Defendants must exercise this optional termination right within 60 days following the Opt-Out Deadline.  The list of entities referenced in this paragraph will be provided *in camera* to the Court upon request.

7.3     If this Settlement Agreement is terminated pursuant to the terms hereof, or fails to become effective for any reason, then: (a) all orders of the Court preliminarily or otherwise approving the Settlement shall be vacated; (b) the Settling Parties shall be returned to the *status quo* that existed in the Action immediately prior to the date of execution of this Settlement Agreement (subject to appropriate extensions of deadlines to enable the Action to proceed); and (c) the Settling Parties shall retain all of their respective rights and defenses as of immediately prior to the date of execution of this Settlement Agreement.  The Settling Parties shall then proceed in all respects as if this Settlement Agreement and any related orders had not been executed and/or entered.

8.     **Objections to the Settlement**

8.1     The Notice shall require that any objection to the Settlement, or any part of this Settlement Agreement, including Attorneys' Fees and Expenses, and Named Plaintiffs' request for Service Awards, or to the Plan of Allocation and Distribution be in writing and comply with all the requirements set forth herein and by the Court in the Preliminary Approval Order and Notice.

8.2     The Notice shall require that any member of the Class who elects to object to this Settlement Agreement (any part thereof) or to the motion for Attorneys' Fees and Expenses or Service Awards shall do so in writing, signed by the member of the Class who is objecting, and file with the Court a prescribed number of days before the Fairness Hearing as provided for in the Preliminary Approval Order.

8.3     The written objection filed with the Court shall identify the Class Member, name, address, and any attorney representing the objector, and provide: (a) the legal or factual basis for the objection; (b) documentation sufficient to prove the Class Member's membership in the Class; (c) a list of any witnesses, exhibits, or legal authority the objector intends to offer; (d) whether the objector will appear in person at the Fairness Hearing or through counsel; (e) whether the objection applies only to the objector, to a subset of the Class or to the Class as a whole; and (f) a list of all class actions which the objector and/or his, her or its counsel has previously objected.  Any Class Member who fails to timely file and serve such written statement and provide the required information will not be permitted to present any objections at the Fairness Hearing and such failure will render any such attempted objection untimely and of no effect, unless otherwise ordered by the Court.  All presentations of objections will be further limited by the information listed.  A Class Member's mere compliance with the foregoing requirements does not in any way guarantee a Class Member the ability to present evidence or testimony at the Fairness Hearing.  The decision whether to allow any testimony, argument, or evidence, as well as the scope and duration of any and all presentations of objections at the Fairness Hearing, will be in the sole discretion of the Court.

**9.      Appointment of Settlement Administrator**

9.1     The Court shall appoint the Settlement Administrator pursuant to the Preliminary Approval Order.  The duties undertaken by the Settlement Administrator shall be as described in the Plan of Allocation and Distribution and orders of the Court.  All reasonable fees and expenses,

including the compensation of the Settlement Administrator, for Notice and Administration Expenses shall be paid from the Settlement Fund and in the manner set forth above.

### 10.    Miscellaneous

10.1    While denying liability, the Defendants agree that the Action is being settled voluntarily by the Defendants after consultation with competent legal counsel.  The Settling Parties agree that throughout the course of the litigation of the Action, all Settling Parties and their counsel vigorously prosecuted their claims and/or defenses consistent with the applicable rules of procedure and in compliance with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

10.2    The Named Plaintiffs, the Class, and Defendants agree to settle the Released Claims and to execute this Settlement Agreement solely to compromise and settle protracted, complicated and expensive litigation.   Entering into or carrying out this Settlement Agreement, and any negotiations or proceedings related thereto, is not, shall not be construed as, or deemed to be evidence of, an admission or concession by any of the Settling Parties to this Settlement Agreement and shall not be offered or received in evidence in any action or proceeding by or against any Settling Party hereto in any court, administrative agency or other tribunal for any purpose whatsoever, other than to enforce the provisions of the Settlement between the Defendants and the Class, the provisions of this Settlement Agreement, or the provisions of any related agreement, order, judgment or release.

10.3    Each Settling Party shall use its best efforts to cause this Settlement Agreement to be approved and consummated.  The Defendants, Class Counsel, and Named Plaintiffs shall also promptly take such actions as may be reasonably required to obtain final approval by the Court of this Settlement Agreement, and to carry out the terms of this Settlement Agreement.

- 24 -

10.4    The Court shall retain its traditional equitable powers over the Action as those powers pertain to this Settlement Agreement until the monies and funds in the Escrow Account are fully and finally distributed.

10.5    This Settlement Agreement, including its Exhibits, constitutes the entire agreement among the Settling Parties hereto related to the Action and no representations, warranties or inducements have been made to any Settling Party concerning this Settlement Agreement other than the representations, warranties and covenants contained and memorialized in this Settlement Agreement.  The Exhibits to this Settlement Agreement are:

Exhibit A        [Proposed] Plan of Allocation and Distribution;

Exhibit B        [Proposed] Class Settlement Preliminary Approval Order;

Exhibit C        Form of Summary Notice of Settlement;

Exhibit D        Form of Long-Form Notice of Settlement; and

Exhibit E        [Proposed] Form of Judgment.

10.6    To the extent there is a conflict between the provisions of this Settlement Agreement, the Preliminary Approval Order, the Judgment, and/or the Plan of Allocation and Distribution, each such document shall have controlling effect in the following rank order: (i) the Judgment; (ii) the Preliminary Approval Order; (iii) this Settlement Agreement; and (iv) the Plan of Allocation and Distribution.

10.7    This Settlement Agreement may be executed in one or more counterparts, and may be exchanged by facsimile, pdf and/or other imaged signatures which shall be as effective as original signatures.  All executed counterparts taken together shall be deemed to be one and the same instrument.  Counsel for the Settling Parties to this Settlement Agreement shall exchange among themselves signed counterparts and a complete, assembled executed counterpart shall be filed with the Court.

10.8     The Settling Parties and their respective counsel have mutually contributed to the preparation of this Settlement Agreement.   Accordingly, no provision of this Settlement Agreement shall be construed against any Settling Party on the grounds that one of the Settling Parties or its counsel drafted the provision.   Except as otherwise provided herein, each Settling Party shall bear its own attorneys' fees and other litigation expenses and costs.

10.9     This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

10.10   Each of the undersigned represents that he or she is fully authorized to execute this Settlement Agreement on behalf of the Settling Party for which he or she signs.

10.11   This Settlement Agreement and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the Parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice-of-law principles.   This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between all Settling Parties and that all Parties have contributed substantially and materially to the preparation of this Settlement Agreement.

10.12   If the provisions of this Settlement Agreement (or any portion thereof) are held unenforceable in any jurisdiction, then such provisions shall be severable, and the Settling Parties agree that the enforceability of the remaining provisions of this Settlement Agreement shall not in any way be affected or impaired thereby and shall continue in full force and effect.

- 26 -

10.13   The exclusive forum for any dispute arising under or related to this Settlement Agreement, or to enforce the terms of this Settlement Agreement, will be the United States District Court for the Eastern District of Pennsylvania.

10.14   No delay or omission by any Settling Party in exercising any rights under this Settlement Agreement will operate as a waiver of that or any other right.  A waiver or consent given by a Settling Party on any one occasion is effective only in that instance and will not be construed as a bar or waiver of any right on any other occasion, unless otherwise agreed in writing.

10.15   After the Effective Date, dismissal of all claims asserted by Named Plaintiffs against the Defendants is with prejudice.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.**

4887-2195-9960.v2

DATED:  April 15, 2022

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN (*pro hac vice*)
DAVID W. MITCHELL(*pro hac vice*)
BRIAN O. O'MARA (*pro hac vice*)
ALEXANDRA S. BERNAY (*pro hac vice*)
CARMEN A. MEDICI (*pro hac vice*)
ARTHUR L. SHINGLER III (*pro hac vice*)

ALEXANDRA S. BERNAY

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
patc@rgrdlaw.com
davidm@rgrdlaw.com
bomara@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com
ashingler@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
RANDI D. BANDMAN (*pro hac vice*)
420 Lexington Avenue
New York, NY  10170
Telephone:  212/693-1058
randib@rgrdlaw.com

Plaintiffs' Interim Class Counsel

MILLER SHAH LLP
JAMES C. SHAH (#80337)
JAYNE A. GOLDSTEIN (#48048)
NATALIE FINKELMAN BENNETT (#57197)
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: 610/891-9880
866-300-7367 (fax)
jcshah@millershah.com
jagoldstein@millershah.com
nfinkelman@millershah.com

Interim Liaison Counsel

4887-2195-9960.v2

DATED:  April 15, 2022

PATTERSON BELKNAP WEBB
  & TYLER LLP
WILLIAM F. CAVANAUGH (*pro hac vice*)
ADEEL A. MANGI (*pro hac vice*)
STEPHANIE TEPLIN (*pro hac vice*)
JONATHAN H. HATCH (*pro hac vice*)
GEORGE A. LOBIONDO (*pro hac vice*)
SARA A. ARROW (*pro hac vice*)

_____
     WILLIAM F. CAVANAUGH

1133 Avenue of the Americas
New York, NY 10036-6710
Telephone:  212/336-2000
wfcavanaugh@pbwt.com
aamangi@pbwt.com
steplin@pbwt.com
jhatch@pbwt.com
globiondo@pbwt.com
sarrow@pbwt.com

COVINGTON & BURLING LLP
THOMAS O. BARNETT (*pro hac vice*)
ASHLEY E. BASS (*pro hac vice*)
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone:  202/662-6000
tbarnett@cov.com

BALLARD SPAHR LLP
LESLIE E. JOHN (PA Id. No. 62290)
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone:  215/665-8500
john@ballardspahr.com

Attorneys for Defendants Johnson & Johnson
and Janssen Biotech, Inc.