UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re REMICADE ANTITRUST LITIGATION | ) | Civil Action No. 2:17-cv-04326-KSM |
| | ) | **(Consolidated)** |
| | ) | |
| This Document Relates To: | ) | <u>CLASS ACTION</u> |
| | ) | |
| INDIRECT PURCHASER ACTIONS. | ) | The Honorable Karen S. Marston |
| | ) | |
| | | PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION BY THE ILLINOIS AND MASSACHUSETTS ATTORNEYS GENERAL TO INTERVENE FOR LIMITED PURPOSE |

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...........................................................................................1

II.  RELEVANT LEGAL AND FACTUAL BACKGROUND .................................3

    A.  Defendants' Alleged Antitrust Violations Have Been Well Known for Five Years ...........................................................................................3

    B.  The Plan of Allocation Provides Fair and Reasonable Recovery to All Class Members........................................................................................5

    C.  Plaintiffs Lack Standing to Assert Antitrust Damages Claims Under Massachusetts and Illinois Law ..............................................................7

        1.  Illinois Law Bars Plaintiffs in this Action from Pursuing Relief Under its State Antitrust Law ..................................................7

        2.  Plaintiffs Likewise Lack Standing to Assert a Claim for Relief Under Massachusetts Law ........................................................9

III.  AGAINST THE TOTALITY OF THE LEGAL AND FACTUAL CIRCUMSTANCES OF THIS ACTION, THE TWO STATES FAIL TO SATISFY THE PREREQUISITES OF RULE 24 ..........................................10

    A.  Objectors' Motion Is Untimely............................................................10

    B.  The Two States' Interest in This Litigation is Unimpaired ..................12

    C.  Plaintiffs Have Adequately Represented the Interests of All Class Members ............................................................................................14

IV.  PERMISSIVE INTERVENTION IS LIKEWISE INAPPROPRIATE ............16

V.  THE *KEURIG* MATTER, CONSIDERED AS A WHOLE, SUPPORTS DENIAL OF INTERVENTION ....................................................................18

VI.  CONCLUSION..........................................................................................20

4866-6104-1206.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Benjamin v. Dep't of Pub. Welfare of Pa.*,
701 F.3d 938 (3d Cir. 2012) .................................................................................. 10

*Brennan v. Cmty. Bank, N.A.*,
314 F.R.D. 541 (M.D. Pa. 2016) ...................................................................... *passim*

*Brody By & Through Sugzdinis v. Spang*,
957 F.2d 1108 (3d Cir. 1992) ................................................................................ 16

*Brookins v. S. Bend Cmty. Sch. Corp.*,
95 F.R.D. 407 (N.D. Ind. 1982), *affirmed sub nom.*,
*U.S. v. S. Bend Cmty. Sch. Corp.*, 710 F.2d 394 (7th Cir. 1983) ........................... 16

*Calibuso v. Bank of Am. Corp.*,
299 F.R.D. 359 (E.D.N.Y. 2014) ........................................................................... 15

*Ciardi v. F. Hoffmann-La Roche, Ltd.*,
436 Mass. 53 (2002) .............................................................................................. 9

*Demchak Partners Ltd. P'ship v. Chesapeake Appalachia, LLC*,
2014 WL 4955259 (M.D. Pa. Sept. 30, 2014) ........................................................ 12

*Dupler v. Costco Wholesale Corp.*,
705 F. Supp. 2d 231 (E.D.N.Y. 2010) .................................................................... 15

*Est. of Kelly ex rel. Gafni v. Multiethnic Behav. Health, Inc.*,
2009 WL 2902350 (E.D. Pa. Sept. 9, 2009) ..................................................... 16, 17

*Frullo v. Landenberger*,
61 Mass. App. Ct. 814 (2004) ................................................................................. 9

*Garcia v. S&F Logistics*,
2022 WL 2392029 (E.D. Pa. July 1, 2022) ............................................................ 16

*Harris v. Pernsley*,
820 F.2d 592 (3d Cir. 1987) .................................................................................. 16

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977) ................................................................................... 4, 5, 7, 9

*In re Asacol Antitrust Litig.*,
2016 WL 4083333 (D. Mass. July 20, 2016) ........................................................... 9

4866-6104-1206.v1

**Page**

*In re Baby Prods. Antitrust Litig.*,
   708 F.3d 163 (3d Cir. 2013)......................................................................................6

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)......................................................................................6

*In re Cmty. Bank of N. Va.*,
   418 F.3d 277 (3d Cir. 2005)........................................................................10, 13, 14

*In re Dig. Music Antitrust Litig.*,
   812 F. Supp. 2d 390 (S.D.N.Y. 2011)......................................................................8

*In re Dynamic Random Access Memory Antitrust Litig.*,
   2013 WL 12333442 (N.D. Cal. Jan. 8, 2013).........................................................15

*In re Effexor Antitrust Litig.*,
   337 F. Supp. 3d 435 (D.N.J. 2018) .......................................................................7, 8

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)...............................................................................6

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009)..............................................................................14, 15

*In re Johnson & Johnson Derivative Litig.*,
   900 F. Supp. 2d 467 (D.N.J. 2012) ........................................................................14

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
   383 F. Supp. 3d 187 (S.D.N.Y. 2019)....................................................................18

*In re Nexium (Esomeprazole) Antitrust Litig.*,
   968 F. Supp. 2d 367 (D. Mass. 2013) ......................................................................8

*In re Novartis & Par Antitrust Litig.*,
   2019 WL 3841711 (S.D.N.Y. Aug. 15, 2019).........................................................8

*In re Opana ER Antitrust Litig.*,
   162 F. Supp. 3d 704 (N.D. Ill. 2016) .......................................................................7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   827 F.3d 223 (2d Cir. 2016)....................................................................................16

*In re Pet Food Prods. Liab. Litig.*,
   629 F.3d 333 (3d Cir. 2010)..............................................................................14, 15

- iii -

Page

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
     2015 WL 5458570 (D. Mass. Sept. 16, 2015) ..........................................................8

*In re Wellbutrin XL Antitrust Litig.*,
     756 F. Supp. 2d 670 (E.D. Pa. 2010) .....................................................................8

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*,
     419 F.3d 216 (3d Cir. 2005)...................................................................................10

*McDonough v. Toys "R" Us, Inc.*,
     80 F. Supp. 3d 626 (E.D. Pa. 2015) .......................................................................6

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
     72 F.3d 361 (3d. Cir. 1995)...................................................................................10

*O'Connell v. Microsoft Corp.*,
     2001 WL 893525 (Mass. June 14, 2001) ...............................................................8

*Sullivan v. DB Invs., Inc.*,
     667 F.3d 273 (3d Cir. 2011)....................................................................................6

*United Food & Com. Workers Loc. 1776 & Participating*
     *Emps. Health & Welfare Fund v. Teikoku Pharma USA, Inc.*,
     74 F. Supp. 3d 1052 (N.D. Cal. 2014) ...................................................................7

*United States v. Alcan Aluminum, Inc.*,
     25 F.3d 1174 (3d Cir. 1994)...................................................................................10

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
     726 F.2d 956 (3d Cir. 1983)....................................................................................6

*Yim v. Carey Limousine NY, Inc.*,
     2016 WL 1389598 (E.D.N.Y. Apr. 7, 2016) .........................................................15

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
     §1................................................................................................................4, 5, 12
     §2................................................................................................................4, 5, 12

Ill. Comp. Stat.  Ann.
     10/7(2)...........................................................................................................2, 7

Mass. Gen. Laws Ann.
     Chapter 93A ...............................................................................................2, 8, 9

**Page**

Mass. Gen. Laws Ann.
    Chapter 260, §5A ............................................................................................7

Federal Rules of Civil Procedure
    Rule 23 ...................................................................................................8, 13
    Rule 23(b)(2)...................................................................................................16
    Rule 23(b)(3)...................................................................................................16
    Rule 23(c)(2)(A) ............................................................................................13
    Rule 23 (e)(5).................................................................................................13
    Rule 24 .........................................................................................10, 14, 18
    Rule 24(a).................................................................................................16, 17
    Rule 24(a)(2)...................................................................................................10
    Rule 24(b) ...................................................................................................1, 16

4866-6104-1206.v1

## I.      INTRODUCTION

Indirect Purchaser Plaintiffs Local 295 IBT Employer Group Welfare Fund and National Employees Health Plan ("Plaintiffs") submit this Response to the Motion by the Illinois and Massachusetts Attorneys' General to Intervene for Limited Purpose (ECF 183-1) ("Motion").

At its core, the Illinois and Massachusetts Attorneys' General's ("Two States") intervention motion is a simple objection – they don't like the allocation of Settlement funds, at least where their two states are concerned.  Mere dissatisfaction with settlement terms, however, is no basis for allowing intervention and is more properly presented as an objection at final approval.[1]  *See Brennan v. Cmty. Bank, N.A.*, 314 F.R.D. 541, 546 (M.D. Pa. 2016) (Denying intervention where "[a]ny substantive challenges raised by intervenors can be addressed . . . as objections to the settlement.").  That procedural fact alone is sufficient to deny the Two States' Motion.[2]

Further, the Two States' Motion is infirm in a number of additional respects under Rule 24(a)-(b).  First, it is important to recognize certain significant facts.  For more than five years, details underlying the alleged antitrust law violations asserted in the consolidated actions regarding Remicade have been well-known and the subject of extensive nationwide news coverage, including in news outlets in Illinois and Massachusetts.  *See* §II.A., below.

Second, is the significance of the interplay between that widespread media coverage and how damages claims on behalf of indirect purchasers can be pursued.  As relevant here, Massachusetts and Illinois state law bar Plaintiffs from pursuing damages in this Action on their

---

[1]     Citations are omitted and emphasis is added, unless otherwise stated.

[2]     Plaintiffs respond substantively to the arguments concerning the [Proposed] Plan of Allocation and Distribution (ECF 172-5) ("Plan of Allocation") here made by the Two States and will also respond to any proper objection to the Plan of Allocation at final approval.

residents' behalf.  Thus, as the Two States are aware, the Indirect Purchaser Plaintiffs here lack standing to pursue such relief.  And, had they done so, those claims would have been dismissed. Accordingly, Illinois and Massachusetts state law claims for damages have never been asserted in this Action.

Rather, under those same two states' law – as a matter of state policy – the responsibility for pursuing damages under circumstances like this for their residents on a collective enforcement (or, class) basis lies with the Two States.  Indeed, such authority is explicitly stated.  *See, e.g.*, 740 Ill. Comp. Stat. Ann. 10/7(2) ("[N]o person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under [the Illinois Antitrust] Act, ***with the sole exception of this State's Attorney General***.")[3] (emphasis added).

Thus, given the state of Illinois and Massachusetts law, it was incumbent not on Plaintiffs ***but on the Two States*** to act on Massachusetts' and Illinois' indirect purchasers' behalf – either through intervention in this Action or by initiation of their own litigation – when the facts surrounding Defendants' alleged wrongdoing filled the news five years ago.  Instead, the Two States did nothing until after the Settlement and Plan of Allocation were determined – both of which are fair, reasonable, and adequate relief under the claims asserted in this Action for Class Members' without regard to those Class Members' individual states of residence.

All of this being undeniable, the Two States' intervention motion is glaringly untimely. Moreover, Class Members' rights are unimpaired as they have the right to opt out of or object to the Settlement terms at the appropriate time consistent with the procedure established by this Court.  Any suggestion, though, that varying relief premised on the relative strengths and

---

[3]   As discussed more fully herein, Massachusetts is a non-*Illinois Brick*-repealer state and Plaintiffs as business entities lack standing to pursue relief in this Court under Massachusetts consumer protection statute, Massachusetts General Laws chapter 93A.

weaknesses of Class Member claims evidences inadequate representation is as factually inaccurate as it is legally infirm.[4]  *See* §III.C., below (collecting and citing numerous cases that demonstrate that allocation plans that reflect class member claim strength are fair, reasonable, and adequate).

In sum, the Two States have failed to show mandatory or permissive intervention is warranted and have further failed to call into question the Plan of Allocation here.

## II.   RELEVANT LEGAL AND FACTUAL BACKGROUND

### A.   Defendants' Alleged Antitrust Violations Have Been Well Known for Five Years

Defendants' alleged anticompetitive Remicade-related conduct first became widely known five years ago in 2017, upon the filing of antitrust cases against Defendants Johnson & Johnson and Janssen Pharmaceuticals.[5]   The cases received extensive national attention, including in Illinois and Massachusetts.[6]  Exs. A-G (*E.g.*, The Boston Globe , Chicago Tribune, USA Today, The Wall Street Journal, MarketWatch, Dow Jones, The National Law Review).

---

[4]   Of note on this point is that the Two States' entire submission lacks any evidentiary support through declaration or otherwise, whether, for example, with reference to any actual Illinois or Massachusetts Class Member claims or objections, or even in support of factual assertions with regard to Class Counsel's  representation or the matters giving rise to the Two States' Motion.

[5]   *See* biosimilar-competitor Pfizer action (*Pfizer Inc. v. Johnson & Johnson*, No. 2:17-cv-04180-KSM (E.D. Pa.)), a number of indirect purchaser actions (*Nat'l Emps.' Health Plan v. Johnson & Johnson*, No. 2:17-cv-04326 (E.D. Pa.)); *UFCW Loc. 1500 Welfare Fund v. Johnson & Johnson*, No. 2:17-cv-04830 (E.D. Pa.)); *City of Providence v. Johnson & Johnson*, No. 2:17-CV-05058 (E.D. Pa.); *Twin Cities Pipe Trades Welfare Fund v. Johnson & Johnson*, No. 2:17-cv-05371 (E.D. Pa.); *The Welfare Fund of Plumbers Loc. Union No. 200 v. Johnson & Johnson*, No. 2:17-CV-05481 (E.D. Pa.); *Loc. 295 IBT Employer Grp. Welfare Fund v. Johnson & Johnson*, No. 2:17-cv-05570 (E.D. Pa.)), a direct purchaser action by Rochester Drug (*Rochester Drug Cooperative, Inc. v. Johnson & Johnson*, No. 2:18CV00303 (E.D. Pa.)), and an action by retailers Kroger and Walgreen (*Walgreen Co. v. Johnson & Johnson*, No. 2:18-cv-02357-KSM (E.D. Pa.)).

[6]   All reference to "Ex. _" or "Exs. _" are to the exhibits attached to the Declaration of Alexandra S. Bernay in Support of Plaintiffs' Response in Opposition to Response to the Motion by the Illinois and Massachusetts Attorneys' General to Intervene for Limited Purpose ("Bernay Decl."), filed concurrently herewith.

Following consolidation of the putative indirect purchaser antitrust class actions in November 2017, the operative complaint in this action was filed in February 2018. *See* Consolidated Amended Complaint for Violations of the Sherman Antitrust Act, the Clayton Act and State Antitrust and Consumer Protection Statutes (ECF 53) ("Complaint"). Plaintiffs' Complaint specifically alleges two sets of claims: (1) a nationwide claim under the Sherman Act for an injunction; and (2) damages claims for Class Members in states whose state antitrust laws provide Plaintiffs standing to assert such a claim. ECF 53, ¶¶138-242. Private antitrust indirect purchaser class plaintiffs lack standing to seek damages under the Sherman Act and may only seek an injunction. *See, e.g.*, Memorandum (ECF 177) ("Preliminary Approval Order") at 5-6 & n.8 (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)).

As relevant here, however, and discussed more fully below, Plaintiffs lack standing to maintain antitrust claims under Illinois and Massachusetts law. Thus, in addition to a number of other states in which Plaintiffs lack standing, Plaintiffs did not assert state law claims for indirect purchasers of Remicade in Illinois and Massachusetts. Indeed, in both instances, as a matter of enforcement policy, Massachusetts and Illinois assign responsibility for enforcing such alleged antitrust violations under state law directly to the Attorneys General of those states. *See* §II.C, below.

Despite the widely disseminated news coverage of alleged antitrust law violations by Defendants and despite the fact Plaintiffs here lack standing to assert state-law claims on behalf of their residents – a fact of which the Two States are well aware – neither of the Two States took any action then or in the intervening five years on behalf their respective residents by filing a lawsuit seeking recovery of damages for their residents.[7] Instead, they sat on the sidelines and

---

[7] No representatives from Massachusetts or Illinois ever contacted counsel for Plaintiffs during the pendency of the case to discuss joining the action. Representatives from the Two States only

only after an excellent Settlement was preliminarily approved, did the Two States file their Motion

seeking only a change to the Plan of Allocation.  *See* ECF 172-5.  In short, as evidenced by the

Settlement and Plan of Allocation, as well as pursuant to state and federal antitrust law governing

this matter, the residents of Illinois and Massachusetts, while still receiving a benefit from the

Settlement, are not recovering as much of a benefit as the proposed intervenors want.

**B.    The Plan of Allocation Provides Fair and Reasonable Recovery to All Class Members**

The proposed Plan of Allocation sets forth how claims will be reviewed and processed, and

how the Settlement Fund will be allocated and disbursed.  *See* ECF 172-5.  The allocation method

recognizes that some Class Members reside in or made reimbursements in the Selected States,

which permit recovery for indirect purchases in a manner that is precluded under the Sherman

Antitrust Act under *Illinois Brick*, 431 U.S. 720 (1977).  To the extent a Class Member resides

outside of the Selected States, remedies for purchases made outside of the Selected States would

likely be limited to equitable relief.  Indeed, in its Preliminary Approval Order, the Court carefully

considered the Plan of Allocation and the purposes and reasons for the three-tier structure and its

relationship to applicable state and federal law.  In so doing, the Court found the Plan of Allocation

to be fair, reasonable, and adequate.  ECF 177 at 26 & n.14.

Under the Plan of Allocation, Class Members' Recognized Claims are determined as

follows:

(a)    The Recognized Claim of Class Members that reside or have their principal place of business in one of the Selected States shall be the total dollars spent by that member to indirectly purchase or provide reimbursement for some or all of the purchase price of Remicade.

(b)    The Recognized Claim of Class Members that do not reside or have their principal place of business in one of the Selected States but indirectly purchased or

---

reached out to Plaintiffs after the Settlement was executed and after the filing of Plaintiffs' preliminary approval motion.  *See* Bernay Decl., ¶7.

provided reimbursement for some or all of the purchase price of Remicade in one or more of the Selected States shall be the sum of:

(i)     The total dollars spent to indirectly purchase or provide reimbursement for some or all of the purchase price of Remicade in any of the Selected States; and

(ii)    The total dollars spent to indirectly purchase or provide reimbursement for some or all of the purchase price of Remicade outside of the Selected States multiplied by 0.01.

(c)     The Recognized Claims of Class Members of that do not reside or have their principal place of business in one of the Selected States and did not indirectly purchase or provide reimbursement for some or all of the purchase price of Remicade in any of the Selected States shall be the total dollars spent to indirectly purchase or provide reimbursement for some or all of the purchase price of Remicade multiplied by 0.01.

ECF 172-5, ¶5.

As the ability of members of the Class to recover is tied primarily to the laws of the Selected States, this Plan of Allocation appropriately recognizes and reflects each Class Member's likely ability to recover should the case have been litigated to resolution.  Allocation plans such as this are routinely used and approved in class action litigation.  "When assessing proposed plans of allocation, courts utilize the same standard for determining whether to approve the settlement itself."  *McDonough v. Toys "R" Us, Inc*., 80 F. Supp. 3d 626, 648 (E.D. Pa. 2015).  "Therefore," the *Toys "R" Us* court explains, "the proposed plan needs to be fair, reasonable and adequate."  *Id*. Importantly, the district court "must determine whether the compromises reflected in the settlement – including those terms relating to the allocation of settlement funds – are fair, reasonable, and adequate when considered from the perspective of the class as a whole."  *In re Baby Prods*. *Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013); *see also In re Cendant Corp. Litig*., 264 F.3d 201, 248 (3d Cir. 2001).  "In general, ***a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable***."  *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000).  "A district court's 'principal obligation' in approving a plan

- 6 -

of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'"  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)).

**C.      Plaintiffs Lack Standing to Assert Antitrust Damages Claims Under Massachusetts and Illinois Law**

Plaintiffs lack standing to bring class antitrust damages claims under the laws of Illinois and Massachusetts.  In addition, the Two States have failed to take any steps to join or otherwise assist in the litigation in the five years that Defendants' alleged anticompetitive Remicade-related conduct has been publicly known.[8]  Thus, given the limitations imposed on Plaintiffs by the Two States and their years of inaction, and but for the efforts of Plaintiffs here in providing the most benefits to the largest number of Remicade indirect purchasers consistent with applicable law, the two states' resident Class Members likely would have received no recovery at all.

**1.      Illinois Law Bars Plaintiffs in this Action from Pursuing Relief Under its State Antitrust Law**

Illinois admits that a private class action is not available under Illinois' *Illinois Brick* repealer statute.  Indeed, §7(2) of the Illinois Antitrust Act provides that "no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General, who may maintain an action *parens patriae*. . . ." 740 Ill. Comp. Stat. Ann. 10/7(2).  "[T]he restrictions in the Illinois Antitrust Act appear to reflect a policy decision regarding the feasibility of duplicative recovery, which is explicitly entrusted to the attorney general, not indirect purchasers."  *In re Effexor Antitrust Litig.*, 337 F. Supp. 3d 435, 459 (D.N.J. 2018).

---

[8]      Significantly, the lengthy failure of the Two States' to pursue damages for their residents under their respective state antitrust laws is highlighted by the relevant four-year statutes of limitation applicable to each.  *See* 740 Ill. Comp. Stat. Ann. 10/7(2); and Mass. Gen. Laws Ann. ch. 260, §5A.

Accordingly, a majority of courts in the Third Circuit and elsewhere hold that Illinois state antitrust law prohibits indirect purchaser class actions. *See, e.g.*, *id.* (dismissing indirect purchaser class's Illinois state antitrust claims); *see also In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 723 (N.D. Ill. 2016); *United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1083-84 (N.D. Cal. 2014); *In re Dig. Music Antitrust Litig.*, 812 F. Supp. 2d 390, 415-16 (S.D.N.Y. 2011); *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 677 (E.D. Pa. 2010); *In re Novartis & Par Antitrust Litig.*, 2019 WL 3841711, at *7 (S.D.N.Y. Aug. 15, 2019). Courts explain "'[t]he Illinois restrictions on indirect purchaser actions are intertwined with Illinois substantive rights and remedies . . . [such that] application of Rule 23 would "abridge, enlarge or modify" Illinois' substantive rights, and therefore Illinois' restrictions on indirect purchaser actions must be applied in federal court.'" *Effexor*, 337 F. Supp. at 459 (citing *Wellbutrin*, 756 F. Supp. at 677); *see also In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 408-09 (D. Mass. 2013); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2015 WL 5458570, at *17 (D. Mass. Sept. 16, 2015) (Rule 23 does not preempt Illinois antitrust law ban on class actions).

That Plaintiffs lack standing to bring Illinois-law-based antitrust damages claims and that those claims were never asserted or at issue in this action has been a matter of public record since the action's filing in 2017.[9]

---

[9]    The claim that Plaintiffs should have called the Illinois' Attorney General's office is nonsensical. ECF 183-1 at 5. Class Plaintiffs' standing – and, therefore, the contours and manner of their obligation to specific Class Members – derives from applicable state and federal law. Here, for example, Illinois bars Plaintiffs from asserting an Illinois state law claim. That same law, though, explicitly assigns responsibility to the Illinois State Attorney General to take such action. Any argument that it is somehow incumbent on Plaintiffs to prompt the Illinois Attorney General to do its job flies in the face of Illinois law and that state's policy choices.

### 2. Plaintiffs Likewise Lack Standing to Assert a Claim for Relief Under Massachusetts Law

Massachusetts is a non-*Illinois Brick*-repealer state. *O'Connell v. Microsoft Corp.*, 2001 WL 893525, at *3-*5 (Mass. June 14, 2001). Plaintiffs, therefore, are barred from asserting a Massachusetts antitrust-law-based claim here. And, while non-business consumers are able to assert antitrust-related claims under Massachusetts General Laws Chapter 93A (Massachusetts' consumer protection statute), the Two States' arguments to the contrary notwithstanding, the Plaintiffs here cannot. Mass. Gen. Laws Ann. ch. 93A.

As the court in *In Re Seroquel XR (Extended Release Quetiapine Fumarate) Antitrust Litigation* recently held in dismissing similar claims under Massachusetts law, "End-Payors lack standing to bring Chapter 93 A claims because they were indirect purchasers engaged in commerce." 2022 WL 2438934, at *20 (D. Del. July 5, 2022).

> The distinction between a business claim and a consumer claim under Chapter 93 A "[u]ltimately . . . turn[s] on whether a given party has undertaken the transaction in question for business reasons, or has engaged in it for purely personal reasons (such as the purchase of an item for personal use)."

*Id.* (alterations in original) (citing *Frullo v. Landenberger*, 61 Mass. App. Ct. 814, 821 (2004)). Chapter 93A "distinguishes between 'consumer' and 'business' claims, the former actionable under §9, the latter actionable under §11."[10] *Frullo*, 61 Mass. App. Ct. at 821.

Given that distinction, Massachusetts courts apply the *Illinois Brick* rule to claims brought under §11, but not to claims brought under §9. *See In re Asacol Antitrust Litig.*, 2016 WL 4083333, at *13 (D. Mass. July 20, 2016); *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53, 62-63 (2002). Further, Massachusetts courts hold that in section 11 cases, "the court shall be guided in its interpretation of unfair methods of competition by the provisions of the [Massachusetts]

---

[10] "'[A]ny transaction in which the plaintiff is motivated by business considerations gives rise to claims only under the statute's business section.'" *Id.* at 20 (alterations in original).

Antitrust Act," which bar indirect purchaser suits pursuant to *Illinois Brick*. *Hoffmann-La Roche*, 436 Mass. at 63.

As was the case in *Seroquel*, the Plaintiffs here, as third-party payer health-and-welfare funds, indirectly purchased or made reimbursements for Remicade in the course of their business or institutional practices. Thus, they lack standing to have brought a claim under Massachusetts Law.

## III.   AGAINST THE TOTALITY OF THE LEGAL AND FACTUAL CIRCUMSTANCES OF THIS ACTION, THE TWO STATES FAIL TO SATISFY THE PREREQUISITES OF RULE 24

Rule 24 sets forth four prerequisites to be met before a motion to intervene will be granted: (1) the motion must be timely; (2) the intervenor must have an interest in the litigation; (3) disposition of the action may impair that interest; and (4) the interests of the proposed intervenor are not adequately represented. *Brennan*, 314 F.R.D. at 543; *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005). Failure to satisfy ***any one*** of Rule 24's prerequisites is fatal. *Brennan*, 314 F.R.D. at 543.

The Two States fail to satisfy these prerequisites.

### A.   Objectors' Motion Is Untimely

To intervene as a matter of right under Rule 24(a)(2), the prospective intervenor must first establish that the application for intervention is timely. *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005). Timeliness of an application for intervention is "'determined by the totality of the circumstances.'" *Id.* (quoting *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 (3d Cir. 1994)). In evaluating the totality of the circumstances, courts consider: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay. *Id.* (quoting *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d. Cir. 1995)).

Although the Third Circuit has established a presumption of timeliness when a motion to intervene is filed within the opt-out period, this presumption can be rebutted by facts establishing widespread early awareness of the matter and unjustified delay in moving to intervene. *Brennan*, 314 F.R.D. at 545. Indeed, the Third Circuit held that an ***essential*** aspect of the timeliness analysis is knowledge of the action. *Id.* at 544 (citing *Benjamin v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938 (3d Cir. 2012)).

Facts alerting the public to Defendants' alleged anticompetitive wrongdoing and attendant Remicade price inflation became widely known five years ago, with extensive nationwide media coverage in September 2017, including in the two largest news outlets in Illinois and Massachusetts. *See* §II.A., above. Indeed, the alleged wrongdoing gave rise to no less than nine separate antitrust actions.

Of course, knowledge of the actions and underlying claims does not exist in a vacuum. As discussed above, the Two States have affirmatively taken out of Plaintiffs' hands the ability to recover antitrust damages on behalf of those states' residents. That responsibility lies, in this case, with the Two States. Yet, while any purported need to intervene was, at a minimum, as evident five years ago as it is now, the Two States did nothing on behalf of their residents until now.[11]

---

[11] Moreover, the Two States appearing now, only after the total Settlement amount has been negotiated, ensures that the only effect of the Two States' objections will be to redistribute money from Class Members from other states to the two states (residents for which Plaintiffs are empowered to seek recovery of damages). Had Illinois and Massachusetts timely sought to intervene at the outset or at an appropriate time during the course of the litigation, or even initiated action on their own residents' behalf before the statute of limitations ran, perhaps funds may have been obtained in addition to the Settlement Fund here. As it is, however, having failed to timely act, the Two States are asking this Court to make Class Members with actual damages claims in this Action – rather than Defendants – pay for the Two States' failures.

Applying the totality of the circumstances analysis, the Court in *Brennan* found that the motion was untimely because objectors delayed for ***over a year*** before eventually filing the motion. *Brennan*, 314 F.R.D. at 544.  It follows, *a fortiori*, that a five-year delay is even less justified.

Given Illinois' and Massachusetts' law and the Two States' respective inaction on their residents' behalf, the Two States provide no justification for waiting five years to involve themselves in this matter, whether by initiating action themselves or by the present motion to intervene.

### B.   The Two States' Interest in This Litigation is Unimpaired

While – pursuant to the Two States' own laws – Plaintiffs lack standing to and have never asserted any state-law antitrust damages claims on behalf of Illinois or Massachusetts residents, Plaintiffs did assert a nationwide Sherman Act claim for an injunction, which includes the residents of Illinois and Massachusetts, in addition to all other similarly situated persons throughout the United States.  In the intervening years, however, a need for an injunction to end Defendants' alleged anticompetitive conduct in this case has diminished as biosimilar infliximab competitors have entered the market.[12]  Nonetheless, Plaintiffs negotiated a benefit for non-Selected State resident payers' nominal interest in this action through both a cash component for release of their nominal Sherman Act claim ***and*** a cash component addressing 100% of the cost of Remicade

---

[12]   According to the U.S. Centers for Medicare & Medicaid Services ("CMS"), the average sales price (ASP – calculated as manufacturer revenue divided by units sold, net of discounts and rebates) of infliximab, including the price of Remicade, has dramatically declined as competitors have entered the market.  *See* Bernay Decl., ¶6.  ASP for 10mg of Remicade in 2017 ranged around roughly $87.00.  *Id*.  Within two years, in the face of two competitors at the time in 2019 (Inflectra and Renflexis), the 10mg Remicade ASP had dropped to a range around $63.00.  *Id*.  With three competitors in 2020 (Inflectra, Renflexis and Avsola), Remicade's ASP had fallen to under $48.00 for 10mg.  *Id*.  Responding to the same competition, Remicade's ASP for 10mg was roughly $39.00 and $35.00 for 2021 and the first six months of 2022, respectively – less than half of its ASP when this Action began and generally in line with its infliximab competitor ASPs.  *Id*.

infused within Selected States on an equal basis with all such Class member expenses.[13]  This is a substantial benefit and fairly reflects the relative strengths and weaknesses of Class member claims, including those in Illinois and Massachusetts.

The Two States cannot demonstrate otherwise.  Nor have the Two States identified any actual impairment, in any way, of any Class Member interest by the conduct of this litigation.  *See Demchak Partners Ltd. P'ship v. Chesapeake Appalachia, LLC*, 2014 WL 4955259 (M.D. Pa. Sept. 30, 2014) (no impairment found where class members retained right to opt out).  All the Two States' have identified is their own dissatisfaction with the terms of the Settlement.[14]

And, as demonstrated by the only authority relied on by the Two States in this regard, *Cmty. Bank*, 418 F.3d 277, as well as other on-point authority in this Circuit, intervention is inappropriate in a case such as this.  In *Cmty. Bank*, the class plaintiffs failed to allege viable claims – something that is the opposite of the case here where Plaintiffs are affirmatively barred from asserting Illinois and Massachusetts antitrust claims – and the District Court had affirmatively impaired the ability of class members to opt out of the proposed settlement and also impaired class members rights to confer with certain objecting counsel, thus directly affecting the interests of class members beyond the mere terms of the settlement.  *Id.* at 288, 315.

Those facts are far afield of those before the Court here, where there is no impairment of existing rights at all – any Class Member who is dissatisfied with any term of the Settlement may opt out or object.  Thus, while in *Cmty. Bank*, given the impairment there, the Third Circuit allowed

---

[13]   To be clear, despite the Two States' assertions to the contrary, an Illinois or Massachusetts resident payer's expenses for Remicade infused in any of the Selected States is considered in full under the Plan of Allocation.  ECF 172-5, ¶5(b).

[14]   Significantly, no actual Illinois or Massachusetts Class Members have contacted Plaintiffs and expressed any similar dissatisfaction.  Bernay Decl., ¶8.  If one were to do so, though, as discussed below, the appropriate process for doing so is through their Rule 23 objection or opt-out rights. *See* Fed. R. Civ. P. 23(c)(2)(A) and (e)(5).

the intervention motion, the Third Circuit gave guidance in matters where there is no such impairment – as is the case here – emphasizing that dissatisfaction alone represents an insufficient ground to intervene:

> To be clear, we are in no way suggesting that absent class members who merely express dissatisfaction with specific aspects of the proposed settlement . . . have the right to intervene.  The goals of Rule 23 would be seriously hampered if that were permitted.

*Id.* at 315.  Indeed, courts in this Circuit hold that dissatisfaction with settlement terms alone is *more properly presented in the form of an objection – a right that is essential to Rule 23 litigation and one possessed unimpaired by every Class member here*.  *See, e.g.*, *Brennan*, 314 F.R.D. at 546 ("[I]ntervenors, as class members, are not deprived of their ability to protect their interests in light of this finding.  Any substantive challenges raised by the intervenors can be addressed, if they so choose, as objections to the settlement."); *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 477-78 (D.N.J. 2012) (same.)

Because there is no impairment of Class Members' rights, intervention should be denied.

## C.    Plaintiffs Have Adequately Represented the Interests of All Class Members

The final prerequisite of Rule 24 is that the interests of the objector must not have been adequately represented.  Where, as here, Plaintiffs and Class Members share the same objective, adequacy of representation is presumed.  *See Cmty. Bank*, 418 F.3d at 315.  To prevail on a motion to intervene, the objector must "overcome the presumption of adequate representation" by "demonstrat[ing] adversity of interest, collusion, or nonfeasance on the part of a party to the suit." *Id*.  The Two States provide no such basis to rebut the presumption.

As previously addressed, at its core, the Two States' arguments boil down to a few simple prospects – they do not like the Settlement, they do not like their states' laws, and they do not like that they did not timely file their own case.  They look at the fair and reasonable treatment of

- 14 -

varying Class Members' claims in the Plan of Allocation – treatment that takes into account the relative strengths and weaknesses of Class Members' claims, something that is routinely approved in class action settlements – and without support in a conclusory refashioning, inaccurately decree it to be "conflict of interest." *See* ECF 183-1 at 14.

But the Two States are wrong. The Third Circuit has expressly held that differences in allocation of settlement funds is ***insufficient*** to support a finding of adverse interest. *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010) ("It is not enough for objectors to point to differences in claims, ***allocation amounts***, or state laws without identifying how such differences demonstrate a conflict of interest."); *see also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 271-72 (3d Cir. 2009) (expressly holding that allocation of varying amounts to different class members does not create a divergence of interests).

Thus, the Two States' objections in this regard, and the machinations they proffer calling for additional counsel to represent varying members of the Class (who could not have even brought a claim under their laws) are without support and should be rejected. *See Brennan*, 314 F.R.D. at 546 (rejecting routine objections to the terms of the settlement as bases supporting intervention motion). Differences in monetary allocation simply fail to provide evidence of adversity of interest, collusion, or nonfeasance by the plaintiffs or their attorneys. *Pet Food*, 629 F.3d at 346 ("[V]aried relief among class members with differing claims in class settlements is not unusual. '[A]lmost every settlement will involve different awards for various class members.'"); *Brennan*, 314 F.R.D. at 546.[15]

---

[15]   In addition, numerous other federal courts have rejected virtually the same arguments proffered by the Two States here. *See Calibuso v. Bank of Am. Corp.*, 299 F.R.D. 359, 371 (E.D.N.Y. 2014) ("[T]he Court declines to assume that the differential treatment of Settlement Class Members in the state-law Settlement Subclasses indicates that Named Plaintiffs did not adequately represent the interests of all Settlement Class Members."); *In re Dynamic Random Access Memory Antitrust Litig.*, 2013 WL 12333442, at *50 (N.D. Cal. Jan. 8, 2013) (no requirement for separate representation where "'the plan of allocation "was carefully devised to ensure a fair distribution of

Perhaps recognizing the weakness of their conflict-of-interest argument, the Two States also conjure an argument that the residents of their two states lacked any representation '"at all"' in this matter.  ECF 183-1 at 15.  What is remarkable about this argument is not just that it is flatly inaccurate – indeed, Plaintiffs represented all Class Members and their specific damages and/or injunction claims, as allowed by law, fully and fairly over the course of this litigation, including actual and nominal damages as appropriate – but the Two States' complaint also borders on the absurd given that the sole means of obtaining antitrust damages for their third-party payer residents in a class context is one that they themselves must undertake under their respective state laws. This they simply did not do.[16]

## IV.    PERMISSIVE INTERVENTION IS LIKEWISE INAPPROPRIATE

Rule 24(b) intervention is a '"highly discretionary decision"' left to the judgment of the district court. *Est. of Kelly ex rel. Gafni v. Multiethnic Behav. Health, Inc.*, 2009 WL 2902350, at *8 (E.D. Pa. Sept. 9, 2009) (first citing *Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108,

---

the settlement fund," and in that case, as here, the plan "merely created a structure for ensuring that reimbursement [was] tied to the extent of damages incurred."'") (quoting *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 272 (3d Cir. 2009)); *Yim v. Carey Limousine NY, Inc.*, 2016 WL 1389598, at *5 (E.D.N.Y. Apr. 7, 2016) ("Indeed, courts in the Second Circuit have consistently approved class settlements in which the subclasses have recovered different amounts under the settlement."); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 237-42 (E.D.N.Y. 2010) (granting approval where settlement class members in different groups received varying amounts of relief.).

[16]    The Two States' reliance on *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223 (2d Cir. 2016), is ill-informed and misplaced.  In *In re Payment Card*, the issue before the Second Circuit involved a potential conflict between a Rule 23(b)(3) subclass seeking damages and a Rule 23(b)(2) subclass seeking injunctive relief with no opt-out rights. 827 F.3d at 233-34.  No such circumstance exists where a class without a right to opt-out is foregone for monetary reward across the Class. Class Counsel here also does not generate an increase in attorneys' fees based on the treatment of the Two States' resident Class Members without regard to the Two States' objection, which neither seeks to affect the amount of recovery nor the amount of attorney fees awarded.  *See* ECF 183-1 at 17 (The Two States do not object "to the total amount of the settlement or the attorneys' fees sought by Class Counsel.").

1115 (3d Cir. 1992) and then citing *Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir. 1987)); *accord Garcia v. S&F Logistics*, 2022 WL 2392029, at *1 (E.D. Pa. July 1, 2022).  However, any such permissive intervention motion must be timely and cannot unduly delay or prejudice the adjudication of the original parties' rights.[17]  Fed. R. Civ. P. 24(b).  Indeed, Rule 24(b) requires district courts to consider and ***protect*** the rights of existing parties from undue delay and prejudice caused by intervention.  *Kelly*, 2009 WL 2902350, at *9.  Moreover, the test for permissive intervention under this rule involves "an ***even stricter application*** of standards for intervention as of right."[18]  *Brookins v. S. Bend Cmty. Sch. Corp.*, 95 F.R.D. 407 (N.D. Ind. 1982), *affirmed sub nom.*, *U.S. v. S. Bend Cmty. Sch. Corp.*, 710 F.2d 394 (7th Cir. 1983).

Here, as discussed in reference to Rule 24(a), the Two States' five-year delay before seeking to intervene – particularly given those same states' laws barring Plaintiffs from pursing antitrust damages on their residents' behalf – is entirely untimely.  *See* §III.A., above.

In addition, after doing nothing on their residents' behalf until this Action is at its final stage, the Two States admit that their primary goal is to siphon recovered damages from Class Members who actually have standing to assert such claims for monetary relief in this Action to those that do not.  To wit, the Two States do not object to "the total amount of the settlement or attorneys' fees sought" (*see* ECF 183-1 at 17), they simply want Illinois and Massachusetts residents to be able to "submit claims for the full cost of their Remicade purchases."[19]  *Id.* at 13.

---

[17]  The Two States may of course object to the Settlement or opt-out entirely at the appropriate time.

[18]  For this reason alone, the Two States having failed to demonstrate their entitlement to intervention as of right under Rule 24(a), their Rule 24(b) application likewise should be denied.

[19]  The Two States misrepresent the Plan of Allocation on this point repeatedly, asserting that Illinois and Massachusetts resident payers' purchases are discounted by 99%.  *See, e.g.*, ECF 183-1 at 13.  This assertion is not accurate as all such purchases by Illinois and Massachusetts residents

4866-6104-1206.v1

Without question such a siphoning prejudices the rights of Class Members for whom standing exists under their respective state laws. Illinois' and Massachusetts' residents' lack of standing to assert claims for monetary relief in this Action has been the case since the Action's inception. Moreover, such lack of standing necessarily played a significant part in Plaintiffs' Settlement negotiations and development of a fair and reasonable Plan of Allocation. *See* ECF 177 at 26 & n.14.

The Two States desire to place their residents at this point in time and in this litigation on an equal footing with Class Members who actually do have proper damages claims in this Action – ***and to seek to do so after years of litigation and after Settlement has been negotiated*** – does nothing but prejudice the rights of Class Members whose damages claims are actually before this Court. And the Two States cannot rationally be heard to argue otherwise.

## V.   THE *KEURIG* MATTER, CONSIDERED AS A WHOLE, SUPPORTS DENIAL OF INTERVENTION

The Two States reliance on *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, while confounding, is also instructive. 2021 WL 1393336 (S.D.N.Y. Apr. 13, 2021) ("*Keurig II*").

First, the Two States fail to inform the Court here that the intervention motion in *Keurig* was, in fact, ***unopposed***. *See* Letter to Court (*Keurig* ECF 1272) and The Indirect Purchaser Plaintiffs' Response to Motion by Illinois and Florida Attorneys General to Intervene (*Keurig* ECF 1273), filed in *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No 1:14-MD-02542 (S.D.N.Y). The *Keurig* court, therefore, lacked the benefit of a fulsome and complete adversarial discussion of the Rule 24 issues presented. Here, the Court has such benefit.

---

for infusions that occur in Selected States – damages claims for which Plaintiffs actually have standing to pursue – are submitted under the Plan of Allocation at 100% of their value.

Second – and perhaps more compellingly absent from the Two States' *Keurig* discussion – is the fact that the intervening states there achieved through their objection ***absolutely no changes*** to the *Keurig* settlement terms.  The state objectors there, as here, simply wanted more money from the settlement fund for their residents, whose settlement participation had been discounted due to "'unique provisions in the[ir] antitrust laws' such that 'potential recovery [in those states] is less than the potential recovery of the residents of all other repealer states.'"  *Keurig II*, 2021 WL 1393336, at *1.  Significantly in that regard and unlike Plaintiffs here, the *Keurig* plaintiffs had asserted nationwide damages claims, which would include the objecting states' residents.  *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 273 (S.D.N.Y. 2019) (reserving decision on nationwide application of Vermont-based damages claims).  In this Action, there are no damages claims asserted for Illinois or Massachusetts for the standing reasons discussed herein.  In any case, the *Keurig* court, after consideration of virtually the same issues Illinois and Massachusetts raise here, found the settlement there – without any change to the allocation plan – "fair, reasonable, and adequate . . . and in the best interests of the Settlement Class."  *See* Order and Final Judgment at 4 (*Keurig* ECF 1394).

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Two States' Motion.

Dated:  October 3, 2022

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN
DAVID W. MITCHELL
BRIAN O. O'MARA
ALEXANDRA S. BERNAY
CARMEN A. MEDICI
ARTHUR L. SHINGLER III


s/ Alexandra S. Bernay
ALEXANDRA S. BERNAY

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
patc@rgrdlaw.com
davidm@rgrdlaw.com
bomara@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com
ashingler@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
RANDI D. BANDMAN
420 Lexington Avenue
New York, NY  10170
Telephone:  212/693-1058
randib@rgrdlaw.com

Plaintiffs' Interim Class Counsel

4866-6104-1206.v1

MILLER SHAH LLP
JAMES C. SHAH (#80337)
JAYNE A. GOLDSTEIN (#48048)
NATALIE FINKELMAN BENNETT (#57197)
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: 610/891-9880
866-300-7367 (fax)
jcshah@millershah.com
jagoldstein@millershah.com
nfinkelman@millershah.com

Interim Liaison Counsel

4866-6104-1206.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on October 3, 2022, I authorized the electronic

filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the email addresses on the attached Electronic Mail Notice List, and

I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to

the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Alexandra S. Bernay
ALEXANDRA S. BERNAY

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  xanb@rgrdlaw.com

United States District Court Eastern District of Pennsylvania

# Mailing Information for a Case 2:17-cv-04326-KSM NATIONAL EMPLOYEES HEALTH PLAN v. JOHNSON & JOHNSON et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **SARA A. ARROW**
  sarrow@pbwt.com,mcolitigation@pbwt.com

- **GREGORY S. ASCIOLLA**
  gasciolla@dicellolevitt.com,8567571420@filings.docketbird.com,asaldana@dicellolevitt.com

- **RANDI D. BANDMAN**
  randib@rgrdlaw.com,susanm@rgrdlaw.com

- **THOMAS O. BARNETT**
  tbarnett@cov.com

- **ASHLEY E. BASS**
  abass@cov.com

- **NATALIE FINKELMAN BENNETT**
  nfinkelman@millershah.com,smoss@millershah.com,pleadings@millershah.com

- **ALEXANDRA S. BERNAY**
  xanb@rgrdlaw.com,e_file_sd@rgrdlaw.com,dwatts@rgrdlaw.com

- **JEFFREY CAO**
  jcao@cov.com

- **WILLIAM F. CAVANAUGH , JR**
  wfcavanaugh@pbwt.com,mcolitigation@pbwt.com

- **AUSTIN BLAIR COHEN**
  acohen@lfsblaw.com

- **PATRICK J. COUGHLIN**
  patc@rgrdlaw.com,susanm@rgrdlaw.com

- **FRANK T. DAVIS , JR**
  ftd@fbdlaw.com

- **Jim Davy**
  jimdavy@allriselaw.org,davesprout@windstream.net,jimdavy@gmail.com

- **ROSS E. ELFAND**
  relfand@whitecase.com,jdisanti@whitecase.com,mco@whitecase.com,ogierke@whitecase.com

- **EMMA ELLMAN-GOLAN**
  eellmangolan@pbwt.com

- **JOSEPH GOLDBERG**
  jg@fbdlaw.com,ftd@fbdlaw.com,sdr@fbdlaw.com,drt@fbdlaw.com,acs@fbdlaw.com,vjw@fbdlaw.com

- **JAYNE A. GOLDSTEIN**
  jagoldstein@millershah.com,pleadings@millershah.com

- **NICHOLAS T. HART**
  nick@harrisonhartlaw.com,carter@harrisonhartlaw.com

- **LESLIE E. JOHN**
  john@ballardspahr.com,LitDocket_East@ballardspahr.com,omalleyLB@ballardspahr.com

- **JEFFREY F. KINKLE**
  jkinkle@pbwt.com

- **NOLAN C. KNIGHT**
  nknight@munsch.com,aberry@munsch.com

- **GEORGE A. LOBIONDO**
  globiondo@pbwt.com

- **ADEEL A. MANGI**
  aamangi@pbwt.com,mcolitigation@pbwt.com

- **ABIGAIL E. MARION**
  amarion@pbwt.com,mcolitigation@pbwt.com

- **CARMEN A. MEDICI**
  cmedici@rgrdlaw.com,slandry@rgrdlaw.com,e_file_sd@rgrdlaw.com,ckopko@rgrdlaw.com

- **DAVID W. MITCHELL**
  DavidM@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **BRIAN O. O'MARA**
  bomara@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **CHARLES R. PEIFER**
  cpeifer@peiferlaw.com,mjackson@peiferlaw.com,wboyd@peiferlaw.com,mlaforgelara@peiferlaw.com,igarcia@peiferlaw.com,charrison@peiferlaw.com

- **SCOTT E. PERWIN**
  sperwin@knpa.com,aneill@knpa.com,dwilliams@knpa.com,mmitchell@knpa.com

- **ARTHUR L. SHINGLER , III**
  ashingler@rgrdlaw.com

- **DENNIS STEWART**
  dstewart@gustafsongluek.com,DJakubauskiene@gustafsongluek.com

- **WHITNEY E. STREET**
  WhitneySt@hbsslaw.com,whitney-street-0082@ecf.pacerpro.com,jeff@blockesq.com

- **STEPHANIE TEPLIN**
  steplin@pbwt.com,mcolitigation@pbwt.com

- **VINCENT J. WARD**
  vjw@fbdlaw.com

- **CAROL WEILAND**
  cweiland@cov.com

- **ELIZABETH WINGFIELD**
  wingfielde@ballardspahr.com,elizabeth.victoria.wingfield@gmail.com

- **DANHUI XU**
  dxu@pbwt.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)