UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re REMICADE ANTITRUST LITIGATION | ) | Civil Action No. 2:17-cv-04326-KSM |
| | ) | **(Consolidated)** |
| | ) | |
| This Document Related To: | ) | <u>CLASS ACTION</u> |
| | ) | |
| INDIRECT PURCHASER ACTIONS. | ) | The Honorable Karen S. Marston |
| | ) | |

**REPLY TO PLAINTIFFS' AND DEFENDANTS' RESPONSE TO MOTION BY
THE ILLINOIS AND MASSACHUSETTS ATTORNEYS GENERAL TO
<u>INTERVENE FOR A LIMITED PURPOSE</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

I.   The Parties conceal the success of state intervention and objection in *Keurig*. ................ 1

II.  The intervention is timely, as the Parties's absurd reasoning would cripple
     the CAFA notice provisions. …..................................................................................... 3

III. By releasing state-law claims without proper compensation, the
     Distribution Plan impairs the interests of Illinois and Massachusetts
     Class Members, showing both the Attorneys General's standing to
     intervene and the inadequacy of Plaintiffs' counsel's representation................................ 4

     A.   Illinois and Massachusetts Class Members have state-law claims. ......................... 6

     B.   The Parties' Proposed Settlement releases the state-law claims of
          Illinois and Massachusetts Class Members without proper compensation. ............. 8

IV.  Absent intervention as of right, fairness to Illinois and Massachusetts Class Members
     requires permissive intervention. ..................................................................................... 10

CONCLUSION.................................................................................................................... 10

# **TABLE OF AUTHORITIES**

Cases

*Calibuso v. Bank of Am. Corp.,*
   299 F.R.D. 359 (E.D.N.Y. 2014) ................................................................... 9
*Ciardi v. F. Hoffmann-La Roche, Ltd.,*
   436 Mass. 53 (2002) ....................................................................................... 7
*Cmty. Vocational Sch. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*,
   No. CV 09-1572, 2017 WL 1376298 (W.D. Pa. Apr. 17, 2017) ............................. 10
*Dupler v. Costco Wholesale Corp.,* 705 F. Supp. 2d 231 (E.D.N.Y. 2010) ................... 9
*FTC v. Shkreli,* 581 F. Supp. 3d 579 (S.D.N.Y. 2022) ................................................. 6
*Illinois Brick v. Illinois,*
   431 U.S. 720 (1977) ....................................................................................1-2
*In re Cmty. Bank of N. Va. Litig.,*
   418 F.3d 277 (3d Cir. 2005) ....................................................................... 3, 5
*In re Dynamic Random Access Memory Antitrust Litig.,*
   2013 WL 12333442 (N.D. Cal. Jan. 8, 2013) ................................................. 9
*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,*
   No. 14-MD-2542 (VSB), 2021 WL 1393336 (S.D.N.Y. Apr. 13, 2021) .............. 1, 9
*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,*
   No. 14-MD-2542 (VSB), Report and Recommendation on Objections to
   Settlement, ECF 1376 (S.D.N.Y. Apr. 13, 2021)............................................. 2
*In re National Football League Players' Concussion Injury Litig.,*
   No. 14-1995, 2019 WL 188431 (E.D. Pa. Jan. 14, 2019) ................................ 5
*In re Pet Food Prods. Liab. Litig.,* 629 F.3d 333 (3d Cir. 2010)................................. 9
*In re Signet Jewelers Limited Secs. Litig.,*
   No. 1:16-cv-06728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020)........................... 5
*State of Ill., ex rel. Burris v. Panhandle E. Pipe Line Co.,* 935 F.2d 1469 (7th Cir. 1991) .......... 6

Statutes

Class Action Fairness Act, 28 U.S.C. § 1715 ................................................... 1, 3, 4, 9
Massachusetts Gen. Laws c. 93A  ........................................................................ 7–8
740 ILCS 10/7(2) ................................................................................................ 6, 8

<u>Other Authorities</u>

4 Newberg and Rubenstein on Class Actions § 13:56 (6th ed. June 2022) .................................... 5

Fed. R. Civ. P. Rule 23 ............................................................................................................... 5

Fed. R. Civ. P. Rule 24(a) ........................................................................................................... 5

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,*
    No. 14-MD-2542 (VSB), Original Long Form Notice Proposed by the Plaintiffs,
    ECF 1115-7 (S.D.N.Y.Sep. 30, 2020) ..................................................................................... 2

S. Rep. No. 109-14, 2005 U.S.C.C.A.N. 3 .............................................................................. 4, 9

## INTRODUCTION

In their attempt to dissuade the Court from granting the Illinois and Massachusetts Attorneys General's (the "Attorneys General") motion to intervene, Plaintiffs and Defendants (the "Parties") rely on several unanticipated misrepresentations of law and fact.[1] First, and contrary to the Parties' false—and premature—assertions on the merits, state intervention in the *Keurig* settlement resulted in the *Keurig* Court siding with the States of Illinois and Florida. A Special Master's recommendation in favor of these states prompted the plaintiffs to amend the allocation plan to treat Illinois and Florida purchasers like those in other *Illinois Brick* Repealer States. Second, the Parties' timeliness argument borders on the absurd, and would cripple the notice provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. Third, in underrating the Attorneys General's interest in the litigation and exaggerating the adequacy of Plaintiffs' counsel's representation, the Parties misrepresent the rights afforded under Illinois and Massachusetts law and released by the settlement. Accordingly, the Court should grant the Attorneys General's motion to intervene.

## ARGUMENT

I.     **The Parties conceal the success of state intervention and objection in *Keurig*.**

The Parties deride *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation* as irrelevant, if not supportive of their position, asserting that "the intervening states there achieved through their objection absolutely no changes to the *Keurig* settlement terms." ECF Nos. 186 at 25 (emphasis omitted), 187 at 5; *see also* No 1:14-MD-02542, 2021 WL 1393336 (S.D.N.Y. Apr. 13, 2021). That is wrong. The states' intervention and objections induced a

---

[1] Accordingly, the Attorneys General submit this reply addressing only those misrepresentations of law and fact they could not anticipate in their initial brief. *See* Policies and Procedures of the Honorable Karen Spencer Marston § II.B.4 (March 2022).

change to that allocation plan that afforded their citizens equal treatment to those in other *Illinois Brick* Repealer States—and tripled their recovery.

After intervening successfully in *Keurig*, both Florida and Illinois filed objections to the proposed plan of allocation.[2] Originally, the plan of allocation had three categories, one of which comprised only Florida and Illinois. Ex. A (Original Long Form Notice Proposed by the Plaintiffs, *Keurig*, No. 14-md-02542 (S.D.N.Y. Sep. 30, 2020), ECF No. 1115-7, at 5–6). This category limited Florida and Illinois indirect purchasers to only one-third the recovery of purchasers in other Repealer States. Following briefing and a hearing held to address the States' objections, the *Keurig* Special Master "recommend[ed] that the Court sustain the Objection of the Attorneys General and require the Plan of Allocation to treat Florida and Illinois as Repealer States." Ex. B (Report and Recommendation on Objections to Settlement, *Keurig*, No. 14-md-02542 (S.D.N.Y. June 2, 2021), ECF No. 1376, at 3–4). The Special Master did so after concluding that other courts had treated Florida and Illinois as Repealer States, and "that the laws of Florida and Illinois d[id] not present sufficient differences, in the context of this settlement, to justify treating indirect purchasers in Florida and Illinois differently than indirect purchasers in other states." *Id.*

The *Keurig* Court accepted this recommendation. As a result, the *Keurig* plaintiffs amended the plan of allocation to include Florida and Illinois as Repealer States. Ex. C (*Keurig* Long Form Settlement Notice).[3] The *Keurig* Special Master's decision supports intervention

---

[2] The Attorneys General did not address the success of the *Keurig* objection initially as it relates to the merits of their anticipated objections, not intervention. But, based on the Parties' arguments, the Attorneys General must address the Parties' misrepresentation of *Keurig* now.

[3] *See Keurig Indirect Purchasers Antitrust Settlement*, JND Legal Administration. https://www.keurigindirectpurchasersettlement.com/admin/api/connectedapps.cms.extensions/asset?id=b585102c-0ef0-4245-9bc2-09ed0eea9ba7&languageId=1033&inline=true (last accessed on Oct. 14, 2022).

here, as it illustrates the need for the Attorneys General to ensure that the Distribution Plan treats indirect purchasers in their states fairly.

## II.    The intervention is timely, as the Parties' absurd reasoning would cripple the CAFA notice provisions.

The Parties argue that intervention is untimely—despite the Attorneys General moving to intervene well before the opt-out deadline. But the Parties' timeliness arguments both misrepresent the law and facts, and would render CAFA's notice provisions useless.

The Third Circuit has established a presumption of timeliness when a motion to intervene is filed within the opt-out period. *In re Cmty. Bank of N. Va.,* 418 F.3d 277, 314 (3d Cir. 2005). In fact, the Third Circuit recognized that it is:

> [n]ot until the existence and limits of the class have been established and notice of membership has been sent does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome of the case.

*Id*. The Parties concede as much. ECF No. 186 at 17. But rather than acknowledging the timeliness of the motion to intervene, the Parties argue that the Attorneys General should have moved to intervene five years ago. ECF No. 186 at 17–18. Beyond assuming falsely that the Attorneys General had any way of knowing contemporaneously about the numerous class actions filed nationally, the Parties misunderstand the nature of the intervention. The Attorneys General seek to prevent the Settlement from unfairly releasing the state-law claims of indirect purchasers of Remicade residing in Illinois and Massachusetts, and companies with their principal place of business in Illinois and Massachusetts that provide reimbursement for Remicade ("Illinois and Massachusetts Class Members"). Knowledge of the initial action aside, the Attorneys General could not have known five years ago that this action would result in a settlement releasing claims that Plaintiffs' counsel never brought.

3

More troublingly, the Parties' timeliness reasoning would abrogate CAFA's notice provisions. Under CAFA, parties settling putative class actions must notify state attorneys general about the complaint and the terms of the proposed settlement. Congress intended this notice to facilitate the states' ability to intervene "to combat the 'clientless litigation' problem" and protect their residents from unfair treatment. S. Rep. 109-14. 2005 U.S.C.C.A.N. 3, 33. But under the Parties' reasoning, the Attorneys General's timely intervention could occur only years *before* they received any CAFA notice. The Parties' interpretation of the timeliness element would render CAFA's notice provisions a dead letter. Thus, their interpretation cannot be correct.

Instead, the motion to intervene was timely because the Attorneys General filed it before the end of the opt-out period, less than two months after preliminary approval, and well before the final settlement hearing.

**III.    By releasing state-law claims without proper compensation, the Distribution Plan impairs the interests of Illinois and Massachusetts Class Members, showing both the Attorneys General's standing to intervene and the inadequacy of Plaintiffs' counsel's representation.**

The issue raised by the present motion is whether the Attorneys General have sufficient interest to intervene in this matter—not, as the Parties appear to argue, whether Plaintiffs' counsel could, or did, assert Illinois and Massachusetts state law claims. Illinois and Massachusetts are Repealer States and Illinois and Massachusetts Class Members have state-law claims directly and through the Attorneys General's *parens patriae* authority. The proposed settlement would release these claims without compensation.[4] This uncompensated release impairs the interests of Illinois and Massachusetts Class Members, affording their Attorneys

---

[4] The Parties also assert that the non-Selected States' recovery stems from the "release of their nominal Sherman Act claim[s]." ECF No. 186 at 18–19. But they say nothing about Illinois and Massachusetts Class Member's state-law claims.

General standing to intervene on their behalf. Moreover, this impairment—and Plaintiffs'
counsel's refusal to cure it—illustrates the inadequacy of representation of Illinois and
Massachusetts Class Members.

The Attorneys General have shown that they have sufficient interest in this litigation to
be permitted to intervene as a matter of right. Once more twisting Third Circuit precedent, the
Parties argue that the Attorneys General lack an interest in the litigation and that the settlement
does not impair indirect purchasers' interest. ECF Nos. 186 at 12-14, 187 at 3–4; *see also In re
Cmty. Bank*, 418 F.3d at 314 ("In the class action context, the second and third prongs of the
Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation."). Both
arguments are contrary to the facts and unsupported by law.

To approve a class action settlement, a court must find that all aspects of the settlement
are "fair, reasonable and adequate." Fed. R. Civ. P. Rule 23(e)(2). Both the negotiating process
leading to the settlement and the settlement's substantive terms impact this analysis. *In re Signet
Jewelers Limited Secs. Litig.*, No. 1:16-cv-06728, 2020 WL 4196468, at *1 (S.D.N.Y. July 21,
2020). A court should consider whether the proposal treats class members in subclasses equitably
relative to each other. Fed. R. Civ. P. Rule 23(e)(2). "Put simply, the court's goal is to ensure
that similarly situated class members are treated similarly." 4 Newberg and Rubenstein on Class
Actions § 13:56 (6th ed. June 2022).

Contrary to the Parties' unfounded contentions, the Attorneys General are not simply
dissatisfied with the proposed Distribution Plan. ECF Nos. 186 at 14, 187 at 3–4.[5] Instead, the

---

[5] Defendants' reliance on *In re National Football League Players' Concussion Injury Litigation* is
misleading. No. 14-1995, 2019 WL 188431 (E.D. Pa. Jan. 14, 2019). There, the court denied a motion to
intervene as futile because the proposed intervenor filed after the entry of a final judgment. *Id*. at 5–8.
Here, intervention would not be futile because the Attorneys General's timely raised position—that the
Proposed Settlement is not fair—has never been heard before this Court.

Attorneys General object to the Plan treating Illinois and Massachusetts Class Members unfairly relative to class members in other Repealer States. The proposed Distribution Plan provides Illinois and Massachusetts Class Members with only 1% of a pro-rata share of their purchases—much less than similarly situated class members in the Parties' so-called Selected States. Moreover, the Attorneys General have standing to object to this unfair treatment and inadequate representation as *parens patriae* on behalf of Illinois and Massachusetts Class Members, whom this Settlement would shortchange.

> **A.    Illinois and Massachusetts Class Members have state-law claims.**

Notwithstanding whether Plaintiffs' counsel purported to assert them, Illinois and Massachusetts Class Members have state-law claims arising from Defendants' anticompetitive conduct.

The Illinois Antitrust Act (the "IAA") states clearly that "no provision in [the IAA] shall deny any person who is an indirect purchaser the right to sue for damages." 740 ILCS 10/7(2). Although only the Illinois Attorney General has standing to bring collective antitrust actions on behalf of indirect purchasers, *see e.g., FTC v. Shkreli*, 581 F. Supp. 3d 579, 628, 637 (S.D.N.Y. 2022), "Illinois law explicitly permits indirect purchasers to sue under the state's antitrust laws," *State of Ill., ex rel. Burris v. Panhandle E. Pipe Line Co.*, 935 F.2d 1469, 1479 (7th Cir. 1991). Thus, Illinois residents who indirectly purchased or reimbursed purchases of Remicade have the right to sue Defendants.

Similarly, Massachusetts residents have state law antitrust claims arising out of Defendants' conduct. In Plaintiffs' Amended Consolidated Compliant ("Am. Compl."), Plaintiffs assert claims on behalf of:

> "all persons and entities . . . who indirectly purchased, paid and/or provided
> reimbursement for some or all of the purchase price of Defendants' infliximab . . .

exclud[ing] . . . any "flat co-pay" consumers whose purchases of Defendants' infliximab were paid in part by a third-party payor and whose co-payment was the same regardless of the retail purchase price."

*See* ECF No. 53, Am. Comp. ¶ 28. While Plaintiffs' proposed class excludes "flat co-pay consumers," Plaintiffs' proposed class includes other end-purchaser consumers—*i.e.*, consumers whose insurance did not cover the cost of infliximab, who did not have insurance and paid for the drug, or whose insurance only covered a percentage of the cost of the drug, resulting in a variable cost to the consumer.[6] Thus, regardless of whether Plaintiffs could have brought claims on behalf of commercial indirect purchasers under Mass. Gen. L. c. 93A, § 11,[7] Plaintiffs could have pursued a claim under c. 93A § 9 on behalf of Massachusetts consumer end-purchasers who paid for infliximab in some way other than with a flat co-pay, but chose not to do so. And as Defendants concede, Section 9 of Chapter 93A unequivocally allows a party or a class to pursue indirect purchaser damages on behalf of consumers. *See Ciardi v. Hoffman-La Roche, Ltd.*, 436 Mass. 53, 66–67 (2002) ("We read the language of G. L. c. 93A as a clear statement of legislative policy to protect Massachusetts consumers through the authorization of such indirect purchaser actions." (quotations and citations omitted)); ECF No. 187 at 5–6.[8]

---

[6] As Plaintiffs' Consolidated Amended Complaint explains, because Remicade was sold as a "medical benefit" product, medical providers are the direct purchasers of the drug, and any subsequent reimbursement for that drug (*i.e.*, by an insurance company, self-insured entity, or consumer) is sought by the purchasing medical providers from patients or their insurance providers. *See, e.g.,* Am. Comp. ¶ 43. Where an insurance company does not cover the cost of the drug, a provider can seek reimbursement directly from the patient. *See e.g.,* Am. Comp. ¶ 64. That Plaintiffs contemplated including consumers in the settling class is clear from a Declaration submitted by Ms. Peak supporting Plaintiffs' request for certification of their settlement, which describes how Plaintiffs intend to notify consumer end-purchasers of the settlement, and how those consumers can submit claims under the settlement. See ECF No. 172-11, Peak Decl. ¶¶ 17–22 (describing consumer notice process), ¶¶ 25–28 (describing claims process and that each consumer will be notified "on average 1.9 times via the paid consumer notice alone").
[7] Because the Commonwealth clearly satisfies its standing obligations to intervene in this suit based on Massachusetts consumers' rights under Section 9 of Chapter 93A, it leaves for another day whether commercial end-payors might also have maintained suits under Chapter 93A, Section 11.
[8] Defendants' argument that Plaintiffs did not satisfy the notice requirement of Chapter 93A § 9 is a red herring. Massachusetts is seeking to intervene in this case because Plaintiffs are seeking to release

For these reasons, Massachusetts end-purchaser consumers would have standing to bring an indirect purchasers' suit under Massachusetts law alleging antitrust harm here, and the Massachusetts Attorney General has standing to protect their interests.

**B.     The Parties' Proposed Settlement releases the state-law claims of Illinois and Massachusetts Class Members without proper compensation.**

The Proposed Settlement Agreement would release Illinois Class Members' IAA claims and Massachusetts' consumers' indirect purchaser claims under Chapter 93A. The Proposed Settlement Agreement defines "Plaintiffs' Released Claims" as:

> "[A]ny and all claims, demands, damages, harm, injuries, actions, causes of action, suits, proceedings, matters, or disputes, of any kind whatsoever, whether known or unknown, suspected or unsuspected, accrued or unaccrued, and contingent or non-contingent, which now exist or have existed upon any theory of law or equity (whether contractual, common law, statutory federal, state, local, or otherwise, including but not limited to any claims for compensatory or punitive damages, or for attorneys' fees, costs, or disbursements of any kind) **against Defendants arising prior to February 28, 2022 that relate in any way to any antitrust, unfair competition, consumer protection, Lanham Act or similar common law cause of action regarding Remicade, Inflectra, or any other infliximab product that was asserted or could have been asserted** based on the facts alleged in the Action . . . .

*See* ECF No. 172-4 ¶ 1.25 (emphasis added). This broadly written provision releases both federal and state-law claims. It includes claims that were not—but "could have been"—asserted. It lacks any carve-out for the claims Plaintiffs' counsel purports to have eschewed. Individual members of the class could have brought IAA claims. And as discussed above, class members also could have maintained claims under Mass. G. L. c. 93A. Thus, although Plaintiffs have not asserted IAA or Chapter 93A claims in this case, the Parties' settlement releases these claims nonetheless.

---

Massachusetts consumers' potential 93A claims without just compensation. Regardless of whether the Plaintiffs in this case satisfied the procedural requirements necessary to seek 93A damages, the relevant question is whether they should be allowed to release all future claims brought on behalf of Massachusetts consumers. The Commonwealth believes strongly that they should not.

*See id*. And they do so without providing adequate compensation for these state-law causes of action—especially considering the compensation available to the Selected States.

By singling out the unrepresented Class Members of two states for unfair treatment, this Proposed Settlement illustrates why CAFA exists and what it—and *parens patriae* authority generally—commends to state attorneys general: intervention and objection. *See* S. Rep. No. 109-14, 2005 U.S.C.C.A.N. 3 ("New section 1715 is designed to ensure that a responsible state and/or federal official receives information about proposed class action settlements and is in a position to react if the settlement appears unfair to some or all class members or inconsistent with applicable regulatory policies."); *In re Keurig*, 2021 WL 1393336, at *3 (holding that "states' *parens patriae* interest in protecting the economic well-being of their citizens constitutes legitimate grounds for intervention" in unfair class action settlements).

Further, for the same reasons this Settlement impairs the litigation interests for the Attorneys General, it illustrates Plaintiffs' counsel's inadequate representation of Illinois and Massachusetts Class Members. The Attorneys General's objection stems not from complaints with the settlement generally,[9] but the Parties' unfair decision to deem Illinois and Massachusetts as Non-Selected States. Plaintiffs' counsel are maximizing the recovery of other Selected State indirect purchasers and reimbursers at the expense of Illinois and Massachusetts Class Members.

---

[9] The Parties' authorities do not involve the representation issue presented here: the Attorneys General object not to establishing separate subclasses, but to relegating Illinois and Massachusetts Class Members to the wrong subclass. *See In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 340–41 (3d Cir. 2010) (objections about the establishment of two subclasses and the amounts allocated to each particular subclass); *Calibuso v. Bank of Am. Corp.*, 299 F.R.D. 359, 371 (E.D.N.Y. 2014) (objections based on the length of time that damages could be considered being different for two subclasses, because the recovery for the sub-class brought under state-law claims differed from those brought under federal sub-class claims); *In re Dynamic Random Access Memory Antitrust Litig.*, 2013 WL 12333442, at *50 (N.D. Cal. Jan. 8, 2013) (a Special Master found that the appointment of an Allocations Counsel to advance the separate interest of the resellers within the settlement class and the direct participation of reseller class members resulted in all definable subgroups within the class being fully and fairly represented.); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 246–49 (E.D.N.Y. 2010) (none of the objections raised involved class members being placed in the wrong sub-class).

*See* ECF No. 186 at 17 n.11. The Attorneys Generals sought only to convince the Parties to treat Illinois and Massachusetts Class Members fairly and according to the logic of the Distribution Plan. Faced with the Parties' refusal to change course—and Plaintiffs' counsel's refusal to represent Illinois and Massachusetts Class Members adequately—the Attorneys General moved to intervene.

### IV.    Absent intervention as of right, fairness to Illinois and Massachusetts Class Members requires permissive intervention.

Even if the Attorneys General could not justify intervention as of right (which they have), permissive intervention would be appropriate. As explained above, the prompt filing of the motion to intervene established that intervention is timely and will not unduly delay these proceedings. So, the only consideration is whether permissive intervention will unduly prejudice the original parties. *Cmty. Vocational Sch. Of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*, CV 09-1572, 2017 WL 1376298, at *8 (W.D. Pa. Apr. 17, 2017). If the Court allows the Attorneys General to intervene *and* sustains their objection, the original parties will, at most, receive a few dollars less for their pro-rata share of the settlement. But absent intervention, the Parties will bargain away releases of the Illinois and Massachusetts Class Members' legitimate claims in exchange for a mere 1% of that received by similarly situated class members. Especially compared to this inequity, the original parties' prejudice is minimal. Consequently, permissive intervention will not unduly prejudice the Parties, making it appropriate here.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court should grant the motion of the Attorneys General to intervene as a matter of right or permissively for the limited purpose of objecting to the Proposed Settlement and the proposed Distribution Plan.

10

October 18, 2022

THE STATE OF ILLINOIS,
KWAME RAOUL,
ATTORNEY GENERAL

By: */s/ Jim Davy*
Jim Davy (PA ID No. 321631)
Special Assistant Attorney General for the
State of Illinois
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
Phone: (215) 792-3579
jimdavy@allriselaw.org

Richard S. Schultz, Jr. (*pro hac vice*)
AAG, Antitrust Bureau
Brian M. Yost (*pro hac vice*)
AAG, Antitrust Bureau
Office of the Illinois Attorney General
100 West Randolph Street
Chicago, IL 60601
Phone: (872) 272-0996
Fax: (312) 814-4902
Richard.Schultz@ilag.gov
Brian.Yost@ilag.gov

*Counsel for Proposed Intervenor*
*State of Illinois*

Respectfully Submitted,

COMMONWEALTH OF MASSACHUSETTS
MAURA HEALEY
ATTORNEY GENERAL

By: */s/ Jim Davy*
Jim Davy (PA ID No. 321631)
Special Assistant Attorney General for the
Commonwealth of Massachusetts
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
Phone: (215) 792-3579
jimdavy@allriselaw.org

Nathaniel J. Hyman (*pro hac vice*)
Assistant Attorney General
Office of the Attorney General
100 Cambridge Street, 11th Floor
Boston, MA 02108
Office: (617) 963-2514
Mobile: (781) 913-9521
Fax: (617) 722-0184
Nathaniel.J.Hyman@mass.gov

*Counsel for Proposed Intervenor*
*Commonwealth of Massachusetts*

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2022, I caused the foregoing REPLY TO

PLAINTIFFS' AND DEFENDANTS' RESPONSE TO MOTION BY THE ILLINOIS AND

MASSACHUSETTS ATTORNEYS GENERAL TO INTERVENE FOR A LIMITED

PURPOSE, and the attached EXHIBIT A, EXHIBIT B AND EXHIBIT C to be filed with the

Clerk of Court using the Court's Electronic Document Filing System, which served copies on all

interested parties registered for electronic filing, and is available for viewing and downloading

from the ECF system.

By: */s/ Jim Davy*
Jim Davy (PA ID No. 321631)
Special Assistant Attorney General for the
States of Illinois and Massachusetts
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
(215) 792-3579
jimdavy@allriselaw.org

*Counsel for Proposed Intervenors,*
*State of Illinois and*
*State of Massachusetts*

2