Jose Gomez
Apartado 11041-1000
San Jose SJ 10102
COSTA RICA
j.gomez@miserablemail.com

November 14, 2022

Clerk, United States District Court
601 Market Street
Philadelphia PA  19106

       In re:  Remicade Antitrust Litigation, No. 2:17-cv-04326 KSM

To the Court:

Pursuant to the directive in the "Information Regarding Class Action Settlement," buried on page 4 thereof, are instructions to send a letter to the Court outlining objections. Notably, the website advises claimants that they must object by November 30, 2022, but the website does not give the address and makes a person read the lengthy and confusing informational sheet.  This in itself is objectionable and is not fair or reasonable.

As purportedly required by the notice, but not by Rule 23 which only requires I certify that they pertain to myself, the class, and any sub-class, I  notify the Court that I do not intend to call witnesses at the fairness hearing and will rest on these objections as it is all material that is part of the record and self explanatory issues.

I am a member of the class having purchased Remicade in 2016 in the State of Florida for certain chronic conditions.  I did not file a claim because I object to the content of the claim form as explained below and the terms.

I also did not opt out because I want the settlement to change as stated below.

I will file a claim or I will opt out after this Court renders final terms of the settlement and the payment provisions.

1

Objection 1: The requirement that people opt out PRIOR to this Court setting the terms of the settlement is not appropriate. Specifically, as stated on the notification, "The Plan of Allocation is subject to change until the Court approves it." It makes no sense that a person dissatisfied with the settlement can "object" which could change the settlement or "opt out" and not object. If my objections are sustained, in part or completely, then I would not want to "opt out." If the settlement is approved as stated, then I would "opt out." But a person cannot make that decision prior to knowing the final terms of the settlement as approved by this Court. A person should not have to opt out before the terms of the settlement are approved by the Court. A person does not know if they agree with the final terms and conditions until this Court makes its final decision. *See also* Federal Rule of Civil Procedure 23(e)(4)("the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so"). Therefore, I object to the opt out deadline being prior to the Court's setting the final terms of the settlement.

Objection 2: The requirement that people have to file a claim before this Court approves the terms of the settlement is similarly not appropriate. As stated on the claim form, "The Plan of Allocation is subject to change until the Court approves it." The claims deadline is November 30, 2022, but the fairness hearing is not until February 2023. If the Court modifies the terms of the settlement due to objections or unfairness, then I would want to file a claim. If the Court does not, then I would want to "opt out." Claimants should not have to file a claim until the terms of the settlement are approved and they can decide if they want to participate or not. As stated above, see Federal Rule of Civil Procedure 23(e)(4). Therefore, I object to the claims deadline being prior to this Court's approval.

Objection 3: The claim form is problematic because it does not allow claimants to submit a claim with a foreign address. Many people travel to the United States for medical treatment and purchase of medication. Other people with United States citizenship who purchased the medication during the class period may have moved outside of the United States. Yet the form does not take this information. The payment should be based on where people purchased the medicine, not where they presently live. Therefore, there exists no reason why the form should not allow claims with people who have foreign addresses. In my case, I was unable to submit a claim because although I purchased Remicade in Florida, my address is in Costa Rica. *See* Federal Rule of Civil Procedure 23(e)(2)(D)(requiring settlement to treat class members relatively equal to one another). Therefore, I object to the requirement that a person list a United States address

as their mailing address on the claim form instead of being able to enter a foreign address then advising where they purchased the medication or received treatment.

Objection 4: It is unclear how the claims are calculated based on state. The payment table appears to imply they are basing payment on the state of residency. It appears that the administrator is using the address on the claim form; however, due to the lapse of time, the present state or location does not necessarily reflect where the product was purchased. This is an antitrust case and the location of residence has no relevance– especially when the "present" residence is considered and not the residence at the time of the purchase of the medication. The test is the location of purchase or delivery to determine whether the violation occurred in a repealer or non-repealer state. Also many people obtain medical treatment in a different state because they live near a border and the state they received medical treatment in is a non-repealer and the state they live in is a repealer state. Worse, people obtaining medical treatment in a non-repealer state could receive a windfall because their address is in a repealer state. In my case, I received treatment in Florida and was staying in Florida during the treatment, but I am presently in Costa Rica. *See* Federal Rule of Civil Procedure 23(e)(2)(D)(requirement that proposal treat class members relatively equal to one another). Therefore, I object on the basis that the present residence is used, not the residence at the time of treatment or the location of purchase.

Objection 5: I object to the requirement on the claim form that a person list their Social Security Number. *See* 5 USC 552a, note, "It shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number." In this case, this is a Court settlement and claimants are being forced to provide their Social Security number. While the Court is not *per se* an "agency," it is clearly inappropriate and not the intent of Congress. More importantly, not all claimants will have Social Security numbers. As to any tax issues, this is a *refund* of an overpayment that occurred due to antitrust violations, not income or earnings. Social Security numbers have not been requested in other antitrust cases even though payments exceeded $600.00, primarily because the payment is a refund. Unless the claims administrator is going to certify that they intend to issue 1099 forms to claimants receiving over $600, then the requirement for a Social Security number is simply meant to chill claims considering the low amount of the settlement fund. If the claims administrator is going to certify that they intend to issue 1099 forms, which they are not planning to do, then a person should be able to opt to withhold the social security number

and have the appropriate withholding tax made. Finally, in some cases, a person may not have a Social Security number because they are a foreign person or because they are residing in the United States with a pending asylum claim with hearings taking up to five years. Therefore, I object to the requirement that a claimant list a Social Security number.

Objection 6: I object to a lack of any privacy policy as to the sensitive data that will be submitted, including HIPAA protected data and social security numbers. It is a well known fact that the claims administrators have been allowing attorneys in other class actions to peruse the data from one case to another. Strict limitations on data retention and access must be implemented with the claims administrator having to disclose all of the privacy policies to potential claimants so they can decide whether they want to submit a claim.

Objection 7: The annual sales of Remicade are over $4,000,000,000 (4 billion dollars) and this settlement spans six years, yet the payment is only $25,000,000. That is about $1 per $1000 in sales of the product, but the antitrust damage was much more. Therefore, the settlement appears unreasonable and meant solely to enrich legal counsel.

Objection 8: A person without documentation can only file a claim for $1000 in purchases. This makes no sense. Many people will not have documentation from 2016. However, a single purchase for a person without insurance was nearly $5000 for a single dose. Therefore, the $1000 claim limitation is arbitrary and capricious as it reflects only 1/5th of the cost of a single dose.

Objection 9: Validity of checks: Any settlement by this Court should be approved with a requirement that checks be valid for the normal 180 day period. Class action administrators have been placing low stale dates on the checks such as 60 or 90 days and by the time a person receives the check– especially if a forwarder is on the address, can exceed that period. This results in funds not being distributed to the recipients and burdensome measures to have a check reissued.

Objection 10: Unclaimed property: Every state has unclaimed property laws governing uncashed checks. Class action attorneys and settlement administrators have been adding terms in that uncashed checks are subject to *cy pres* or redistribution and tricking the courts into signing off on it. In many states, this constitutes a criminal offense. Checks that are unclaimed due to mailing errors or postal delays still belong to the recipient.

Those funds are to be turned over to state unclaimed property administrators after a period of time, not "redistributed" or given for *cy pres* or for attorney fees. Therefore, I object to the claims administrator not properly administering uncashed checks or unclaimed funds through ordinary unclaimed property programs as required by the laws of almost every state.

Objection 11: The Plan of Distribution at paragraph 10 states benefits shall be paid by Zelle, PayPal, Venmo, or ACH direct deposit. However, the claim form only allowed persons to request a check, or use Paypal or Venmo. The preferred option of ACH and Zelle are absent from the claim form. I would want my funds sent by ACH direct deposit to a United States bank account because I do not use Paypal or Venmo. Alternatively, I would accept Zelle which is sponsored by my financial institution. A check is not feasible because the claims administrators mail them to foreign addresses by regular mail that takes between six weeks and three months to receive. Paypal and Venmo (also owned by Paypal) are not banks, have burdensome requirements, and often block payments.

Objection 12: There is no simple method to change the address or paypal address or payment type. There needs to be a simple way for claimants to change their address especially since I will most probably have to appeal this settlement and it could be years until a distribution. If a person's address changes, or their payment method changes such as their Paypal or Venmo email or mobile number, there should be a simple form on the settlement website to accomplish this.

Objection 13: Paypal, Venmo (and if they added it Zelle) sometimes reject payments. For example, Paypal may "limit" an account at any time and not accept the payment. The claims administrators have been doing nothing to notify claimants when Paypal etc. rejects a payment. They simply act like nothing happened and then keep or redistribute the funds. The claimant often does not receive notification of this type of event.

Objection 14: The settlement agreement is not on the website. Unsophisticated consumers are to file objections to the settlement and the provisions, but only summaries are provided. We have no way to see the settlement that we must object to. There are declarations, memorandums, long form notices, short form notices, and a ton of gobbledygook but not the settlements themselves.

Objection 15:  The $2,288,388.90 in expenses appears quite expensive in a $25,000,000 settlement.  That is nearly ten percent of the settlement.  Moreover, claimants cannot determine what the expenses are from the website and there exists no method for a person to object to what they consist of.  The expenses may be items more proper to be taken from the attorney fees.

Objection 16:  Considering the weak amount of the settlement pool, and the excessive amount of expenses, awarding class counsel twenty-eight percent of $7,000,000 appears to be a windfall.  This Court should not award counsel this amount of fee considering the amount of hours spent and what appears to be bloat.

Objection 17:  Neither the short form notice nor long form notice of settlement provides any real information to a potential objector to know the amount of attorney fees, how much money a claimant would receive, or the potential number of claimants and what the award would be.  The information provided to the public through these notifications are full of legalese without even providing basic information to inform a class member.  The website announcing the settlement contains basically no information and a class member has to dig through the incomplete court documents on the website to try to obtain more information.

Objection 18:  The requirement that class members file objections with the Court and class counsel by mail is burdensome.  An objection form should be on the website and the class administrator could file the objections with the Court.  Requiring a class member to identify witnesses, etc., and appear at a hearing to make simple objections is chilling, inappropriate, and unusual.  A person submitting a claim without documentation for $1000 might receive $10 to $100, although probably more near $10.  To imply the objector would have to call witnesses at their expense, hire an attorney, or appear at the fairness hearing to object is meant to stop class members from participation.

Objection 19:  This is a nationwide class action.  Because of this, and the low amount class members will receive, this Court should have waived the *pro hac vice* requirements for class members to have attorneys appear on their behalf and file objections.  When I called attorneys, some were willing to file my objections for me, but stated that there is a $200 *pro hac vice* fee which simply is not appropriate in this type of nationwide case.  The fee for *pro hac vice* probably exceeds what I would receive through my claim.  In other class actions binding nationwide class members, the *pro hac vice* requirements and fees are waived.  However, in this case, the desire appears to be to stop objections.

Pursuant to Federal Rule of Civil Procedure 23(e)(5), I certify that this objection applies to myself, to the entire class, and to the subset of class members identified in each individual objection above.

I declare under the penalty for perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief. 28 USC 1746.

Respectfully submitted,

Jose Gomez

Cc:   Alexandra S. Bernay, Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900, San Diego, CA 92101.






# UNITED STATES POSTAL SERVICE®

# PRIORITY MAIL®

**FLAT RATE ENVELOPE**

ONE RATE ■ ANY WEIGHT

**TRACKED ■ INSURED**

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

PS00001000014

EP14F July 2022
OD: 12 1/2 x 9 1/2

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

This package is made from post-consumer waste. Please recycle - again.

To schedule free Package Pickup, scan the QR code.



USPS.COM/PICKUP

U.S.M.S. X-RAY



**P** PRIORITY MAIL®

U.S. POSTAGE
$9.90
02904
PM
Date of sale
11/26/22
06 2S SSK
11488575
0049211126162820

EXPECTED DELIVERY DAY 11/28/22

RDC 04

SHIP TO:
ABC AGENTS
PO BOX 37635
PHILADELPHIA PA 19101-0635

CLERK US DISTRICT COURT
601 MARKET ST
PHILADELPHIA PA 19106-1729

RECEIVED NOV 28 2022

C019

USPS TRACKING® NUMBER

9505 5066 8486 2330 3964 08



This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; July 2022; All rights reserved.