IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE REMICADE ANTITRUST LITIGATION. | CIVIL ACTION<br><br>NO. 17-4326-KSM |

## ORDER

**AND NOW**, this 8th day of February, 2023, upon consideration of *Pro Se* Objector Jose Gomez's Motion for Reconsideration of the Court's December 8, 2022 Order (Doc. No. 211) and Plaintiffs' response (Doc. No. 215), the Court finds as follows:

1. This is a consolidated, putative class indirect-purchaser antitrust action in which Named Plaintiffs Local 295 Employer Group Welfare Fund and National Employees Health Plan allege that Defendants Johnson & Johnson and Janssen Biotech, Inc. engaged in anticompetitive conduct related to their infliximab biologic, Remicade, in violation of federal and state antitrust laws and state consumer protection laws. On August 2, 2022, the Court preliminarily approved the Settlement. (Doc. Nos. 177, 178.) Following the preliminarily approval, the Attorneys General for Massachusetts and Illinois filed a Motion to Intervene for a limited purpose. (Doc. No. 183.). Namely, the Attorneys General objected to how their states were categorized in the Plan of Allocation and Distribution.[1] (*Id.*) Plaintiffs and Defendants opposed the motion to

---

[1] As outlined in the Notice and original Plan of Allocation and Distribution, "Settlement Class Members' Recognized Claims are subject to calculation under only one of ¶¶ 5(a), 5(b), or 5(c) below. . . . (a) The Recognized Claim of Class Members that reside or have their principal place of business in one of the Selected States shall be the total dollars spent by that member to indirectly purchase or provide reimbursement for some or all of the purchase price of Remicade. (b) The Recognized Claim of Class Members that do not reside or have their principal place of business in one of the Selected States but indirectly purchased or provided reimbursement for some or all of the purchase price of Remicade in one

1

intervene. (Doc. Nos. 186, 187.) The Court held oral argument on November 29, 2022, which was adjourned midway through so that the parties and Attorneys General could engage in negotiations. Following these discussions, on December 8, 2022, the parties filed an Amended Plan of Allocation and Distribution, which the Court approved that same day. (Doc. Nos. 202, 203.) The Court also directed Plaintiffs to post the Order and Amended Plan of Allocation and Distribution to the case website. (Doc. No. 204.) The following day, December 9, the Attorneys General withdrew their motion to intervene. (Doc. No. 205.)

2. Under the Amended Plan of Allocation and Distribution (the "Amended Plan"), which the Court approved in the December 8 Order, the Selected States were amended to also include Illinois and Massachusetts. (*See* Doc. No. 202-1 at 4 n.2 ("'Selected States' include the states or commonwealths in the Settlement Agreement, but shall also include Illinois and Massachusetts.").) Massachusetts, however, is only considered a Selected State with respect to "claims filed by consumers whose Remicade purchases were made only for personal use." (*Id.*) The three categories set forth in the Amended Plan for determining Class Members' *pro rata*

---

or more of the Selected States shall be the sum of: (i) The total dollars spent to indirectly purchase or provide reimbursement for some or all of the purchase price of Remicade in any of the Selected States; and (ii) The total dollars spent to indirectly purchase or provide reimbursement for some or all of the purchase price of Remicade outside of the Selected States multiplied by 0.1. (c) The Recognized Claims of Class Members of [sic] that do not reside or have their principal place of business in one of the Selected States and did not indirectly purchase or provide reimbursement for some or all of the purchase price of Remicade in any of the Selected States shall be the total dollar spent to indirectly purchase or provide reimbursement for some or all of the purchase price of Remicade multiplied by 0.1." (See Doc. No. 172-5 at 4–5.) The Settlement Agreement defined "Selected States" as encompassing Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin. (Doc. No. 172-4 at ¶ 1.31.) Acting as *parens patriae* on behalf of indirect purchasers and reimbursers of Remicade in Illinois and Massachusetts, the Attorneys General argued that Illinois and Massachusetts should be included as Selected States because their respective state laws allow indirect purchasers to recover antitrust damages. (Doc. No. 183.)

allocations are identical to the categories set forth in the original Plan of Allocation and Distribution.  (*Compare* Doc. No. 172-5 at 4–5, *with* Doc. No. 202-1 at 4 ¶ 5.)  Although the claims period ended for the Settlement Class on November 30, 2022, the Amended Plan extended the Notice and claim filing period for Massachusetts consumer and Illinois Settlement Class members.  (*See* Doc. No. 202-1 at 3 n.1.)

3. On January 27, 2023—*fifty* days after the Court entered its December 8 Order—Gomez filed a Motion for Reconsideration, arguing that the rest of the class members have been prejudiced by the Order and that Illinois and Massachusetts class members are being treated more favorably than class members from other states.  (*See* Doc. No. 211.)

4. First, the Court finds Gomez's motion is untimely under Local Rule 7.1(g), which states that a motion for reconsideration must be "served and filed within fourteen (14) days after the entry of the order concerned."[2]  E.D. Pa. L.R. 7.1(g) (governing motions to reconsider orders 'other than those governed by Federal Rule of Civil Procedure 59(e)); *see also Fields v. Am. Airlines, Inc.*, Civil Action No. 19-903-KSM, 2022 WL 2192933, at *9 (E.D. Pa. June 17, 2022) (finding motion to reconsider untimely under Local Rule 7.1(g)).  And even if Federal Rule of

---

[2] The Court recognizes that Gomez is a *pro se* objector.  However, it took Gomez fifty days to file his motion, which is nearly quadruple the number of days permitted under the Local Rules.  "[L]eniency has its limits and litigants, even those appearing *pro se*, cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."  *Kramer v. City of New Kensington*, No. CV 13-606, 2016 WL 406284, at *1 (W.D. Pa. Feb. 3, 2016) (cleaned up).

In addition, the Court notes that Gomez claims that no time limit applies to his motion to reconsider.  (*See* Doc. No. 211 at 1 n.1 ("There exists no time limit to move for reconsideration considering:  (1) There exists no final judgment; (2) Class members were not given any advanced warning about the motion or modification to the terms of distribution, modification of the deadlines, or the special treatment given to residents of Illinois and Massachusetts.").)  Gomez does not cite any authority for this proposition, which runs counter to procedural rules governing motions to reconsider.

Civil Procedure 59(e) were applicable,[3] Gomez's motion to reconsider would still be untimely. *See* Fed. R. Civ. P. 59(e) (stating that "a motion to alter or amend a judgment must be filed no later than 28 days after entry of the judgment").

5. Second, setting aside issues of timeliness, Gomez's motion for reconsideration fails substantively. "Before altering or amending a prior decision, courts in this Circuit require the moving party to show '(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.'" *Fields*, 2022 WL 2192933, at *9 (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). Gomez has not met his burden. Gomez has not pointed to any change in controlling law or the availability of new evidence. And to the extent Gomez argues that the Court must grant his motion to "correct a clear error of law or fact or to prevent manifest injustice," he is mistaken.

6. Gomez argues that class members should have received notice as to the Amended Plan of Allocation and Distribution. (*See* Doc. No. 211 at ¶ 4 ("The Class received no notice or indication that the length of time would be extended solely for residents of two states while claimants from other states are barred from filing their claims late."); *id.* at ¶ 8 ("Yet this Court, without notice to the Class Members, fixed the problem for residents of states that have a proactive advocate while punishing residents of states with a less caring Attorney General (or, as in Gomez' [sic] case, persons who result [sic] outside of a state but bought the product in a repealer state).").) But this argument is belied by the very terms of the Settlement Agreement, which provides "[t]he

---

[3] The Court does not find Rule 59(e) applicable, since it only applies to "motion[s] to alter or amend a *judgment*" and the December 8, 2022 Order was not a judgment. *See* Fed. R. Civ. P. 59(e) (emphasis added). (*See* Doc. No. 204.)

4

Court may approve this Plan of Allocation as proposed or it may amend or modify the Plan of Allocation without further notice to the Settlement Class.  Any orders regarding any amendment or modification of the Plan of Allocation will be posted on www.RemicadeSettlement.com."[4] (Doc. No. 172-5 at ¶ 12.)

   7.  Gomez also contends that the Amended Plan of Allocation and Distribution treats Illinois and Massachusetts class members more favorably than other class members.  (Doc. No. 211 at ¶¶ 4–6.)  In so arguing, Gomez misunderstands the law.  The Amended Plan merely recognizes that Massachusetts and Illinois should be included in the list of "Selected States" because, like the other Selected States, their laws permit recovery of damages for indirect purchasers.[5]  (*See* Doc. No. 215 ("[C]lass members here are treated equitably relative to one

---

[4] The December 8 Order concerning the Amended Plan of Allocation was posted to the settlement website.  (*See* Doc. No. 215 ("Class Counsel, working with the Class Administrator, posted the Amended Plan of Allocation on the website, where it is readily available."); *see also* Doc. No. 204 (December 8 order approving the Amended Plan of Allocation and Distribution and directing "Plaintiffs to post this Order and the Plan of Allocation on the case website, www.RemicadeSettlement.com.").)

[5] *Illinois Brick Co. v. Illinois* bars indirect purchasers from recovering damages under federal antitrust laws.  431 U.S. 720, 730, 736, 746 (1977) (holding that only overcharged direct purchasers may recover monetary damages under federal antitrust laws and that no one else in the chain of distribution, e.g., indirect purchasers, may show that the overcharge has been passed onto them).  However, in *California v. ARC America Corp.*, the Supreme Court held that nothing in *Illinois Brick* prevented indirect purchasers from seeking recovery under *state* antitrust laws.  490 U.S. 93, 105–06 (1989) ("When viewed properly, *Illinois Brick* was a decision construing the federal antitrust laws, not a decision defining the interrelationship between the federal and state antitrust laws.  The congressional purposes on which *Illinois Brick* was based provide no support for a finding that state indirect purchaser statutes are pre-empted by federal law.")  The states that have passed laws authorizing indirect purchasers to recover monetary damages for violations of state antitrust laws are called "Repealer States," since the effect of those statutes is to repeal "the effect of *Illinois Brick* (for purposes of state law claims)."  *In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, MDL No. 2895, 2022 WL 736250, at *22 (D. Del. Mar. 11, 2022).  The states that have not passed such laws are called "Non-Repealer States."  *Id.* ("Other states . . . have not attempted to 'repeal' *Illinois Brick* by statute.  In those 'non-repealer' states, 'it would be inequitable to permit relief where the state has clearly made a policy determination that no such relief should lie.'" (citations omitted)).

Here, the Illinois Antitrust Act in effect repeals *Illinois Brick* by making explicit that "no Provision of this Act shall deny any person who is an indirect purchaser the right to sue for damages," but also limits that

another, with a recognition that some Class members purchased Remicade in states that do not have *Illinois Brick* repealer statutes and others do reside in repealer states."); Doc. No. 215 at 6 n.3 (noting that Massachusetts and Illinois "are uniquely situated among the Selected States. Illinois is a repealer state, with the limitation on class actions[,] and the involvement of that State's Attorney General allowed for approval of the Amended Plan of Allocation. Additionally, while Massachusetts is not a repealer state, due to a unique aspect of its consumer law, Massachusetts consumers may assert what are effectively end-payer antitrust claims under Massachusetts General Laws chapter 93A.").) This does *not* mean that Massachusetts and Illinois class members are being treated more favorably than class members from other states. Rather, they are now being treated the same as class members from other Selected States and are only treated differently from class members in other states because of those states' laws (i.e., non-*Illinois Brick* repealer states and/or states that do not have state laws effectively permitting recovery in antitrust actions).

8. Ultimately, Gomez has failed to show that our December 8, 2022 Order must be amended to prevent manifest injustice or correct any errors of law or fact.

---

right by prohibiting indirect purchaser class actions, except those brought by the state's Attorney General. *See* Illinois Antitrust Act, 740 ILCS 10/7; *see also Staley v. Gilead Sciences, Inc.*, 446 F. Supp. 3d 578, 626 (N.D. Cal. 2020). Because the Illinois Attorney General intervened, and Illinois is a repealer state, Illinois is properly included in the list Selected States.

As for Massachusetts, the Court looks at the state's consumer protection law, Mass. Gen. L. Ch. 93A. *See In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 544 (E.D. Pa. 2010) ("While Massachusetts bars indirect purchasers from bringing claims under its antitrust law, Massachusetts does not bar indirect purchaser standing under its consumer protection act."). Section 11 of the statute applies to "any person who engages in the conduct of trade or commerce," while § 9 applies to "any person, other than a person entitled to bring action under section 11." Mass. Gen. L. Ch. 93A, §§ 9, 11; *see also In re Pharma. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 191 (1st Cir. 2009). *Illinois Brick*'s indirect purchaser rule applies to actions brought under § 11, but not those brought under § 9. *Ciardi v. F. Hoffman-La Roche, Ltd.*, 762 N.E.2d 303 (Mass. 2002). Accordingly, Massachusetts consumers may assert state antitrust claims and therefore they are properly included in the list of Selected States.

For these reasons, Gomez's motion for reconsideration (Doc. No. 211) is **DENIED**.[6]

**IT IS SO ORDERED.**

                                                            **/s/KAREN SPENCER MARSTON**

                                                            KAREN SPENCER MARSTON, J.

---

[6] Gomez has also filed a second motion for reconsideration of the December 8 Order, which appears to be identical to his first motion for reconsideration. (*Compare* Doc. No. 211, *with* Doc. No. 219.) Therefore, his second motion for reconsideration (Doc. No. 219) is **DENIED** for the same reasons as those set forth herein.